## COMMISSIONER OF INTERNAL REVENUE v. HAWAIIAN PHILIPPINE CO.

### No. 8748.

Circuit Court of Appeals, Ninth Circuit.
Jan. 17, 1939.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for petitioner.

George E. Cleary, of New York City, for respondent.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The petition for review presents the question whether the respondent, a Philippine corporation, derived any taxable net income from sources within the United States during the year 1930. The Board of Tax Appeals determined that it did not.

For a number of years respondent has been engaged in the business of milling sugar cane and manufacturing sugar in the Philippine Islands. The cane is obtained from planters under long-term contracts, entered into prior to 1921, whereby the planters agreed to plant their lands to sugar cane for a period of thirty years, cut the cane at their own expense, and deliver it to respondent's railroad cars.

Respondent agreed to transport the cane to the mill and to manufacture it into raw centrifugal sugar. The contracts provide that "as full compensation for all its services * * * the Mill shall have and retain forty-five per cent (45%) of the

sugar produced from the cane of each Planter milled hereunder (or, at its option, forty-five per cent of the net proceeds of sales of said sugar), based on the weight and analyses of the sugar cane milled, the other fifty-five per cent (55%) thereof to belong to the Planter * * *." It was provided that "title to the share of sugar belonging to the Mill * * * shall pass to the Mill upon the manufacture thereof, and prior thereto the right of the Mill to receive, retain and mill the sugar cane shall be absolute." The contracts were to run with the land.

Respondent agreed to render each week a statement of the cane received from each planter and the amount of sugar due him. This amount was to be based upon the chemical analyses, the weight of the cane, and the average factory yield. Upon delivery of the sugar to the warehouse, receipts were to be issued to the planters, who were entitled to ninety days' free storage. Respondent was not obligated to segregate each planter's share.

During the taxable year respondent did not purchase any sugar cane. It never exercised its option under the milling contracts to demand 45% of the net proceeds of the sugar produced, in lieu of its proportionate share of the sugar itself. It kept at all times in its warehouse sufficient sugar to cover all outstanding warehouse receipts.

Respondent's share of the sugar manufactured at its mill during the tax year was 299,213 piculs. This amount included 340 piculs derived from respondent's experimental field. In addition respondent had an inventory of 526 piculs carried over from the previous year. A picul for sugar during the relevant period was 139.44 pounds avoirdupois. Of the total amount 356 piculs were sold in the Philippine Islands and 412 piculs were on hand at the close of the fiscal year.[1] The balance of 298,971 piculs was sold in the United States under the terms of an agency contract. The gross proceeds from the sale of the sugar in the United States amounted to $1,506,-905.40.

The Commissioner determined a deficiency of $66,403.47, computed on the basis of respondent's total net income from all sources, with the exception of certain items of Philippine income not material here. However, the Commissioner does not now contend, and did not contend before the Board, that this computation is correct. The argument now is that the income realized by respondent from the manufacture of sugar in the Philippine Islands and its sale in the United States constituted "gains, profits, and income * * * from the sale of personal property * * * produced (in whole or in part) by the taxpayer without and sold within the United States," under § 119(e) of the Revenue Act of 1928, 45 Stat. 791, 826, 26 U.S.C.A. § 119(e); and that this income should be apportioned between sources within and without the United States as required by the statute and in accordance with a certain formula contained in the regulations.

§ 22(f) of the Revenue Act of 1928, 26 U.S.C.A. § 22(f), provides that "for computation of gross income from sources within and without the United States, see section 119." § 119(e) provides in part that gains, profits, and income from the sale of personal property produced by the taxpayer without and sold within the United States shall be treated as derived partly from sources within and partly from sources without the United States. § 119(f), 26 U.S.C.A. § 119(f), provides in part that the word "produced" includes "manufactured" or "processed". § 119(e) provides further that in the case of gross income derived from sources partly within and partly without the United States, the portion of such net income attributable to sources within the United States may be determined by processes or formulas of general apportionment prescribed by the Commissioner with the approval of the Secretary.

Respondent asserts that the statutory provisions relied on by the Commissioner are inapplicable, and that the case is governed by § 119(c)(3) of the act, 26 U.S.C.A. § 119(c)(3). This provision is as follows: "(c) *Gross income from sources without United States.* The following items of gross income shall be treated as income from sources without the United States: * * * (3) Compensation for labor or personal services performed without the United States." If respondent's view be taken, it would not be liable for any tax since it actually sustained a net operating loss for the tax year from sources within the United States.

The Board determined that respondent's share of the sugar manufactured under the

---

[1] In filing its return respondent adopted the fiscal year ending September 30, 1930. Its books were kept on the accrual basis.

milling contracts was received as "compensation for its milling services", and constituted income to it to the extent of its fair market value at the time and place of receipt. It was found that the respondent had offered satisfactory proof of this market value. Adopting such market value as a cost basis (plus the expense of shipment to the United States), the Board determined that there was no gain from the sale of sugar in the United States, but rather a loss; hence there was no taxable income from sources within the United States.

The Board relied principally upon San Carlos Milling Co. v. Com'r, 24 B.T.A. 1132, Commissioner v. San Carlos Milling Co., 9 Cir., 63 F.2d 153, in which similar milling contracts were construed as contracts of bailment and not of sale.[2] The Commissioner argues that the case is distinguishable, and, if not, should be overruled. He suggests also that if the taxpayer is a producer (i. e., manufacturer) of sugar, it is immaterial whether the sugar cane was acquired under bailment or sale.

■ We think the Board correctly decided the matter. The milling contracts involved here differ in no material respect from those in Commissioner v. San Carlos Milling Co., supra. The relationship between the taxpayer and the planter was one of bailment. We accept the finding of the Board that the sugar received by the taxpayer was compensation for milling services and constituted income to it to the extent of the fair market value of the sugar at the time and place of its receipt. See Treasury Regulations 74, Article 53. To this extent the source of respondent's income was outside the United States. § 119(c)(3), supra. Upon the sale of the sugar in the United States the respondent derived no gain, therefore it received no income from United States sources. Commissioner v. San Carlos Milling Co., supra.

■■ Although in a broad sense the taxpayer may be deemed a "manufacturer" of sugar, as contended by the Commissioner, it is plain that it did not manufacture sugar for its own account. The operation was carried on as a service to the planters.

The fact that the services rendered were manufacturing services does not, we think, render inapplicable the provisions of § 119 (c)(3). The Commissioner has cited no authority for the proposition he advances, that a corporation cannot perform labor or personal services; and no reason has been advanced why § 119(c)(3) was not intended to apply to corporations. Clearly the section, in general, is applicable to corporations. See Article 671, Regulations 74. The 1928 act itself defines the term "person" as including corporations. § 701(a) '(1), 26 U.S.C.A. § 1696(1). Nor do we regard these milling services as any the less personal because they were performed, in part, through the use of machinery, or because of the magnitude of the taxpayer's operations.

■ We think this construction of the phrase "compensation for labor or personal services performed without the United States" is in harmony with the Congressional intent. While from a casual examination 'a plausible argument may be made for treating respondent as a producer under subdivision (e) of § 119, on reading together the material parts of the statute we resolve any doubt in favor of the construction just stated. White v. United States, 59 S.Ct. 179, 184, 83 L.Ed. —.

■ The Commissioner contends that the Board was in error in not allowing a sufficient differential between the established market price of sugar at Iloilo, which was about twenty-five nautical miles distant from the taxpayer's mill, and the value of the sugar at the mill. This contention is based on the testimony that a purchaser who bought sugar from planters at the taxpayer's mill customarily paid thirty centavos per picul less than the Iloilo price. The Board, in effect, determined the fair market value at the mill on the basis of the Iloilo price less the taxpayer's lighterage cost to Iloilo, which ranged from twelve to fifteen centavos per picul. The determination was based on substantial evidence and we cannot say that the Board's finding was improper.

■ The deduction of commissions paid to respondent's selling agent in the United

2 The San Carlos Case involved the question whether a domestic corporation should be entitled to the benefits of § 262 (a) of the Revenue Act of 1921 (42 Stat. 271). The parties apparently agreed that the determination of this question depended upon the further question whether the milling contracts gave rise to a bailment or a sale. The applicability of § 217 (e) and (f) of the 1921 act, 42 Stat. 243, which corresponds to § 119 (e) and (f) of the act of 1928, 26 U.S.C.A. § 119 (e, f) seems not to have been considered.

States and the deduction of the Philippine sales tax were proper. The Commissioner made no point of these deductions on the argument.

Affirmed.