STATE ex Rel. DUNN, Appellant, *v.* AYERS, Governor, et al., Respondents.

(No. 8,181.)

(Submitted April 22, 1941. Decided May 27, 1941.)

[113 Pac. (2d) 785.]

· Mr. *Wellington D. Rankin* and Mr. *Arthur P. Acher,* for Appellant, submitted an original and a supplemental brief, and argued the cause orally.

Mr. *H. Leonard DeKalb,* Mr. *E. M. Hall* and Mr. *John W. Bonner,* Attorney General, for Respondents, submitted an original and a supplemental brief; Mr. *Hall* argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This is an appeal from a judgment of dismissal by the District Court of Lewis and Clark county pursuant to an order sustaining a motion to quash an alternative writ of mandamus theretofore issued.

The petition for the writ set out that the petitioner was a duly licensed physician in Montana; that on March 4, 1937, he was appointed assistant superintendent of the Montana Asylum for the Insane by the then Governor, Roy E. Ayers, and that on the same date his appointment was confirmed by the Senate of the Twenty-fifth Legislative Assembly; that subsequently a commission was duly issued to him; that he qualified for the position by subscribing to the oath and filing the bond prescribed by law, and that he entered upon the discharge of his duties on March 15, 1937. It is further alleged that upon the death of the superintendent the petitioner became the acting superintendent and continued in that position until the appointment of another superintendent on April 30, 1938, after which petitioner continued in his office of assistant.

It is then alleged that on May 15, 1938, the respondent Ayers arbitrarily and without giving petitioner any notice, or an opportunity to be heard, purported to discharge him and directed him to vacate and remove from the quarters furnished him at the asylum. The prayer of the petition is that the defendants be compelled to reinstate petitioner and to pay him his salary during the time he has been prevented from performing his duties.

The sole question raised by the appeal concerns whether or not section 1415, Revised Codes 1935, was repealed by sections 273 and 275, of the same Codes.

Section 1415 was enacted in 1913 and amended in 1923 and 1929. It provides in part: "A superintendent of the state insane asylum and an assistant superintendent, who shall be regularly licensed physicians of the state of Montana, shall be appointed by the governor, and such appointments must be transmitted to and approved by the senate. * * * " It provides that the tenure of office of these appointees shall be four years and the salaries are fixed for each one. It is then provided that "they shall be subject to removal by the state board of commissioners for the insane at any time for misfeasance, non-feasance, or malfeasance in office, but before the superintendent or the assistant superintendent be so removed, formal charges in writing must be preferred, and the superintendent or the assistant charged shall be given opportunity to appear and defend himself against any such charges."

If section 1415 has not been repealed, the Governor had no power summarily to remove this petitioner from the office of assistant superintendent of the asylum for the insane, as it is alleged he purported to do.

In determining the question before us, some examination of the effect of section 1415 is first necessary. That section created the offices of superintendent and assistant superintendent of the hospital for the insane. That the Act had the effect of creating the office of assistant superintendent and providing that the assistant superintendent be a public officer within the ordinary definitions is apparent. The Act fixed the qualifications, salary, and tenure of the position. Not only that, but section 1417 provides that the assistant, as well as the superintendent, must subscribe an oath and furnish a bond. There can be no question but that the superintendent is a public officer, and it will be noted that the qualifications of the assistant superintendent are the same as those required of the superintendent. And it will be further noted that in the section the two are dealt with in the conjunctive and in every case

where one is referred to in a sentence, the other is referred to in the same sentence.

In 1923, subsequent to the passage of sections 273 and 275, which were enacted in 1921, the Act was amended to provide maintenance for both the superintendent and the assistant superintendent, and the same amount of maintenance was provided for each. Further it appears from the allegations of the petition and the general tenor of the provisions of Chapter 126, Revised Codes 1935, sections 1413 et seq., that the assistant superintendent's duties apparently are in some degree executive and are such as require the exercise of a high degree of discretion. It further appears that the assistant superintendent performs the duties of the superintendent when the latter, through death, disability, resignation or absence, is unable to perform them.

When tested by the decisions of this court, section 1415 is clearly an Act creating the office of assistant superintendent of the asylum for the insane and the appointee under the Act is a public officer.

In *State ex rel. Nagle* v. *Kelsey*, 102 Mont. 8, 55 Pac. (2d) 685, 689, the test to be applied in determining whether a particular person is a public officer or a mere employee is stated to be: "(1) It (the office) must be created by the Constitution or by the Legislature, or created by a municipal or other body through authority conferred by the Legislature; (2) it must possess a delegation of a portion of the sovereign power of the government to be exercised for the benefit of the public; (3) the powers conferred and the duties to be discharged must be defined directly or impliedly by the Legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power other than the law, unless they be those of an inferior or subordinate office created or authorized by the Legislature and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity and not be only temporary or occasional. In addition, 'in this state, an officer must take and file an official oath, hold a commission or other written authority, and give an official bond, if the latter be required by

proper authority.' (*State ex rel. Nagle* v. *Page,* supra [98 Mont. 14, 37 Pac. (2d) 575].)''

In that case the court also cites *State ex rel. Barney* v. *Hawkins,* 79 Mont. 506, 257 Pac. 411, 53 A. L. R. 583, in which there is a very full discussion of the term ''officer.'' When the test contained in these two cases is applied to the position created by the provisions of section 1415, it is clear that the petitioner was a public officer and not a mere employee.

Do sections 273 and 275, by the use of the word ''assistant,'' include the office of assistant superintendent of the state hospital for the insane, or are they limited to assistants who have only the status of employees, and not of public officers? Sections 273 and 275 provide:

''273. From and after the passage of this Act the state board of examiners of the state of Montana shall by resolution fix and designate the number, compensation, term, and tenure of office of all assistants, clerks, and stenographers for all civil executive state officers, boards, commissions or departments. Said board shall likewise have the power to discontinue in any or all state offices or to discharge any of said assistants, clerks, or stenographers, for cause or otherwise, whenever in their judgment the best interests of the service requires such actions.''

''275. The civil executive state officers, boards, commissions or departments shall have the power to appoint their own assistants, clerks, and stenographers in the number and for the compensation fixed by the state board of examiners.''

If these sections were intended by the legislature to include the assistant superintendent of the state hospital for the insane, then by their enactment that office was abolished and the legislature left it to the Board of Examiners to recreate it, if it chose to do so. If those sections by implication repeal the provisions of section 1415 so far as they relate to the assistant superintendent, then he was not entitled to notice and hearing—he had no fixed tenure nor fixed salary.

Petitioner questions the right of the Governor to discharge him even though it be granted that sections 273 and 275 had

the effect respondents contend. However, it is not necessary, in the view we take of the case, to discuss that argument.

Did the legislature by the enactment of sections 273 and 275 intend to repeal the provisions of section 1415 as to this office? The basis, of course, for respondents' argument is that, since the name given the office created is that of "assistant superintendent," by the use of the word "assistant" in sections 273 and 275 this office is included. Ordinarily the word "assistant," standing alone, would not seem to contemplate persons who are officers, but rather only those in the position of employees. The ordinary definition of an "assistant" is that he is a "helper." (Webster's New International Dictionary, 2d Ed.) While it is true that the assistant superintendent is the helper of the superintendent, and that he assists him, the provisions as to the assistant superintendent's qualifications, term, tenure, salary, oath and bond indicate that his position is not merely that of a helper alone, but that, even if subordinate to the superintendent, he has a status that is more than a mere helper of his superior. That the courts have considered an assistant, where the term stands alone, as one whose status is that of a mere employee and that his powers are limited to that of a helper, is shown by the definitions appearing in 4 Words and Phrases, Permanent Edition, 553. Typical of the holdings that appear in that work are these definitions:

"An 'assistant' is one who stands by and aids or helps another, and is not an agent. (*Wells-Dickey Co.* v. *Embody*, 82 Mont. 150, 266 Pac. 869, 874.) * * *

"Title of 'assistant' manager implies subordination to manager and subjection of authority to limitations imposed by manager. (*W. T. Rawleigh Co.* v. *Phillips*, 232 Ala. 124, 167 So. 271, 272.)"

As ordinarily used, then, the word "assistant," standing alone, refers to an employee whose duties are to help his superior and who must look to him for his authority to act. In the ordinary use of the word, it does not contemplate persons who, by virtue of the statute, are given the dignity of officers.

The rule is established that in construing legislative pro-

visions words used in the statute are to be construed according to their ordinary meaning. (*State* v. *Bowker*, 63 Mont. 1, 205 Pac. 961; *State ex rel. Hinz* v. *Moody*, 71 Mont. 473, 230 Pac. 575.) Another rule of statutory construction is that in determining the legislative intention in the use of a particular word, the context of the language found in the Act with relation thereto must be considered.

The word "assistant" is used in sections 273 and 275 with the words "secretary" and "stenographer," and since these latter two words ordinarily include only employees and not officers, it is reasonable to assume, in addition to the reasons heretofore set out, that in using the word "assistant" in conjunction with the words "secretary" and "stenographer" it was intended to include those of the same class as the latter, i. e., employees alone. (See *State ex rel. Bitter Root Valley Irr. Co.* v. *District Court*, 51 Mont. 305, 152 Pac. 745.) It is to be noted further that these Acts speak of assistants to civil officers. Since the petitioner is a civil officer, it would seem that the statute plainly excludes him in providing for appointment of assistants to officers.

The repeal, were there one, of the provisions of Section 1415, in so far as they relate to this office, must be by implication, since the provisions of the latter sections do not specifically refer to section 1415. It is elementary that repeals by implication are not favored. (*Tipton* v. *Sands*, 103 Mont. 1, 60 Pac. (2d) 662; *Box* v. *Duncan*, 98 Mont. 216, 38 Pac. (2d) 986, and many others.)

There are other facts in the legislative history of sections 1415, 273 and 275 which are persuasive of the result we reach. In the first place, sections 273 and 275 were enacted by the 1921 legislature, the same legislature which approved the 1921 Codes. The 1921 Revised Codes carry in them section 1415 as it was originally enacted. In 1923 the legislature amended section 1415 by providing for maintenance for the superintendent and assistant superintendent. That amendment recognized that the office of assistant superintendent of the asylum for the insane was still in existence, and that it had its existence

by virtue of the provisions of section 1415 and not by virtue of any act of the State Board of Examiners in creating the office pursuant to the discretion given it to provide assistants under sections 273 and 275. In 1935 the Codes were again revised, and again section 1415 appears as it was originally enacted, together with its amendments.

A further fact entitled to consideration by this court is that the executive officers charged with the administration of the Act interpreted it as though it had not been repealed, for the allegations of the petition are that the petitioner was appointed by the Governor and confirmed by the Senate, the method of appointment provided by the provisions of section 1415. (*State ex rel. Morgan* v. *Knight*, 76 Mont. 71, 245 Pac. 267; *State ex rel. Public Service Commission* v. *Brannon*, 86 Mont. 200, 283 Pac. 202, 67 A. L. R. 1020.)

Respondents point out in their brief certain exceptions by statute to the provisions of sections 273 and 275 and suggest that they indicate a legislative intent to repeal the provisions of section 1415 so far as they concern this petitioner. We have examined these statutes, but do not believe they have the effect suggested by respondents.

There can be no question but that mandamus will lie for the relief sought. This court has recently passed on the question and no discussion of the point should be necessary. (*State ex rel. Keeney* v. *Ayers*, 108 Mont. 547, 92 Pac. (2d) 306.)

The judgment of the district court dismissing the petition is reversed and the cause is remanded, with direction to set aside the order sustaining the motion to quash and to enter an order overruling it, giving the respondents a reasonable time in which to plead further.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN, ANDERSON and MORRIS concur.