## COMMISSIONER OF INTERNAL REVE-NUE v. PIEDRAS NEGRAS BROAD-CASTING CO.

### No. 10035.

Circuit Court of Appeals, Fifth Circuit.
April 3, 1942.

Bernard Chertcoff, Sewall Key, and J. Louis Monarch, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Vernon F. Weekley, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Robert Ash, of Washington, D. C., for respondent.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

The respondent is a corporation organized under the laws of the State of Coahuila, Republic of Mexico, with its principal office and place of business at Piedras Negras, Mexico. Its business is the operation of a radio broadcasting station located at Piedras Negras, just across the Rio Grande from Eagle Pass, Texas. The decisive question presented by this petition for review is whether the respondent, from the operation of its business in 1936 and 1937, derived any income from sources within the United States subject to taxation by the United States.

The taxpayer conducted its affairs in the familiar manner. Its income was derived from the dissemination of advertising over the radio and from the rental of its facilities to customers, referred to as the sale of "radio time." All of its income-producing contracts were executed in Mexico, and all services required of the taxpayer under the contracts were rendered in Mexico. The company maintained a mailing address at Eagle Pass, Texas, and used a hotel room there in which it counted and allocated the funds received in the mails each day.

Contracts with advertisers in the United States were handled through an advertising agent, an independent contractor. The majority of the taxpayer's responses from listeners came from the United States, and ninety-five per cent of its income was from advertisers within the United States. Bank accounts were maintained in Texas and in Mexico. The books and records of the corporation were in Mexico, its only studio was there, and all of the broadcasts by the station originated in Piedras Negras. The broadcasts were equal in volume in all directions, and were heard by listeners in this country and elsewhere.

Section 231(d) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 907, provides that the gross income of a foreign corporation includes only the gross income from sources within the United States. If this taxpayer, a foreign corporation, had no income from sources within the United States, no income tax was levied upon it. The Board of Tax Appeals concluded that none of the respondent's income was derived from sources within the United States, and we agree with that decision.

In Section 119 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 876, Congress classified income, as to the source thereof, under six heads.[1] Since the taxpayer's income was derived exclusively from the operation of its broadcasting facilities located in Mexico, or from the rental of those facilities in Mexico, its income therefrom was either compensation for personal labor or services, or rentals or royalties from property, or both, under the statutory classification. Section 119(a) (3) provides that compensation for personal services performed in the United States shall be treated as income from sources within the United States. By Section 119(c) (3), income from such services performed without the United States is not from sources within the United States. Likewise, rentals from property located without the United States, including rentals or royalties for the use of or for the privilege of using without the United States franchises and other like properties, are considered items of income from sources without the United States. Section 119(c) (4) of the Revenue Act of 1936.

We think the language of the statutes clearly demonstrates the intendment of Congress that the source of income is the situs of the income-producing service. The repeated use of the words *within* and *without* the United States denotes a concept of some physical presence, some tangible and visible activity. If income is produced by the transmission of electromagnetic waves that cover a radius of several thousand miles, free of control or regulation by the sender from the moment of generation, the source of that income is the act of transmission. All of respondent's broadcasting facilities were situated without the United States, and all of the services it rendered in connection with its business were performed in Mexico. None of its income was derived from sources within the United States.[2]

The order of the Board of Tax Appeals is affirmed.

McCORD, Circuit Judge, (dissenting).

I am unable to agree with the majority opinion.

Prior to March, 1935, many programs broadcast over the Mexican station originated in a remote control studio located in Eagle Pass, Texas. After the Communications Commission denied application for continuance of the studio, programs no longer originated in the United States, but the broadcasting company continued its business operations in much the same way that it always had. While the mere broadcasting of electromagnetic waves into this country may not constitute the doing of business which produces income derived from sources within the United States, I do not think the case is as simple as that. The actual broadcasting of messages was not the only act, and the facts should be viewed as a whole, and not singly, to see what was actually being done.

Various advertising contracts provided that the service to be rendered was to be from the station at Piedras Negras, but these contract provisions do not establish that the company was not taxable in this country. The programs of the Piedras Negras Broadcasting Company were primarily designed for listeners in the United States. Ninety per cent of its listener response came from this country, and ninety-five per cent of its income came from American advertisers. Through agents the broadcasting company solicited advertising contracts in this country, and it is shown that contracts were entered into by the company in the name of the Radio Service Co., an assumed name which for reasons beneficial to the company had been registered in Texas. The contracts also contained a provision that venue of any

---

[1] The six classifications are (1) Interest, (2) Dividends, (3) Personal Services, (4) Rentals and Royalties, (5) Sale of Real Property, and (6) Sale of Personal Property.

[2] Cf. Commissioner v. East Coast Oil Co., 5 Cir., 85 F.2d 322, certiorari denied 299 U.S. 608, 57 S.Ct. 234, 81 L.Ed. 449; Commissioner v. Hawaiian Philippine Co., 9 Cir., 100 F.2d 988, certiorari denied 307 U.S. 635, 59 S.Ct. 1032, 83 L.Ed. 1517; Helvering v. Stein, 4 Cir., 115 F.2d 468.

suit on such contracts would be Maverick County, Texas. Moreover, the company used Eagle Pass, Texas, as its mailing address, and its constant use of the United States mails was most beneficial to the company if not absolutely essential to the success of its operation. Money was deposited in American banks, obviously for convenience and to avoid payment of foreign exchange. Agents of the broadcasting company made daily trips to Eagle Pass where they met in a hotel room with advertising representatives and opened the mail and divided the enclosed money according to their percentage contracts with advertisers, and it is shown that the company received much of its income in this manner. It was, therefore, receiving income by broadcasting operations coupled with personal contact in this country.

I am of opinion that all the facts taken together establish that Piedras Negras Broadcasting Company was doing business in the United States, was deriving income from sources within this country, and was taxable. I think the decision of the Board should be reversed. I respectfully dissent.