266 P.2d 371

**BARRACLOUGH et ux.**

**v.**

**STATE TAX COMMISSION et al.**

**No. 7981.**

Supreme Court of Idaho.

Jan. 14, 1954.

Rehearing Denied Feb. 10, 1954.

Robert E. Smylie, Atty. Gen., J. N. Leggat, Asst. Atty. Gen., for appellants.

Carver, McClenahan & Greenfield, Boise, for respondents.

PORTER, Chief Justice.

Respondents filed their state income tax returns for the years 1947, 1948 and 1949, and paid the taxes due thereon as shown by such returns. The State Tax Collector upon an examination of such returns determined that there was a deficiency as defined by Section 63-3051, I.C., in the tax shown on each of such returns; and gave the taxpayers notice of such deficiencies under the provisions of Section 63-3052, I.C.

Respondents protested the assessment of such deficiencies and filed their protest with the State Tax Commission. The State Tax Commission held a hearing on such protest as provided by Section 63-3403(c), I.C.; and by its order affirmed the determination of the income tax deficiencies as made by the tax collector.

This action was commenced in the District Court of Ada County for review of the order of the State Tax Commission as provided by Section 63-3075, I.C. Trial of the cause resulted in findings of fact, conclusions of law and judgment in favor of respondents. This appeal is from such judgment.

Respondents are husband and wife. They are residents of the State of Idaho. Their income consists of the earnings of the husband. He is an insurance examiner, employed from time to time to make examinations of both domestic and foreign insurance companies doing business or seeking to do business within the State of Idaho. Such examinations are made both within the state and at the home offices of foreign insurance companies.

The State Tax Collector in correcting the income tax returns of respondents added thereto as alleged income certain unreported items paid to respondents by domestic insurance companies in connection with the examinations of their affairs; and also added thereto portions of certain sums collected by respondent husband for expenses in making examinations outside of

the state, on the theory that the sums so collected exceeded the reasonable expenses of such respondent. The tax collector also assessed a fifty per cent penalty for fraud and a five per cent penalty for negligence under the provisions of Section 63–3053, I.C.

By their complaint, respondents admit receipt of some of such additional items of income and challenge others assessed against them by the tax collector. They further allege that in their said income tax returns they erroneously returned as taxable income the sums paid to them by foreign insurance companies as compensation for personal services in making examinations at the home offices of such companies when in fact such income is exempt from taxation in the State of Idaho; and that the sums so erroneously returned as taxable income exceed the amount of the items erroneously not reported as income. The complaint alleges that, therefore, there is no tax due the state.

The answer of appellants is, in effect, a general denial of the allegations of the complaint.

At the conclusion of the trial the court found that the amounts received by respondents from foreign companies for the examinations of such companies at their home offices outside the State of Idaho and returned as taxable income exceeded the deficiencies added by the tax collector for unreported income. The trial court concluded that the income so received from foreign insurance companies was exempt from taxation under the provisions of Section 63–3013(b), par. 7, I.C. The court, therefore, concluded there was no tax due from respondents. The trial court did not make findings of fact on the alleged items of deficiency added by the tax collector and challenged by respondents. Neither did the court find on the questions of fraud or negligence and the addition of penalties therefor. Under the court's findings and conclusion that there was no tax due in any event, such additional findings were not necessary for a determination of the cause.

On this appeal appellants challenge the holding of the trial court that the monies received by respondents for examinations of foreign companies at their home offices outside the State of Idaho are not income taxable in this state. The trial court based this holding upon the provisions of Section 63–3013, I.C., the material parts of which are as follows:

"(a) The term 'gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal services as an officer or employee of the state of Idaho or any political subdivision thereof, or any municipality or any agency or instrument or either of the foregoing * * *).

"(b) The term 'gross income' does not include the following items, which

shall be exempt from taxation under this chapter:

\* \* \* \* \* \*

"7. Income of resident persons and domestic corporations of the state of Idaho, from salaries, wages or compensation for personal service, or from the conducting and carrying on of their professions, vocations, trades or businesses, when derived from sources outside of the state of Idaho."

Appellants first contend respondent husband is an employee of the State of Idaho and that the source of the income in question is the Department of Insurance of the State of Idaho. Respondents counter with the contention respondent husband is not an employee of the State of Idaho, but is an independent contractor and that the sources of the questioned income were outside this state.

Section 41-107, I.C., reads as follows:

"The commissioner of insurance may appoint qualified persons to make examinations of the conditions and affairs of any domestic insurance company, association, interinsurance exchange, reciprocal or other organization subject to regulation under the insurance laws of this state, and shall also select qualified examiners to represent this state in examination of foreign or alien insurance companies licensed to do an insurance business in this state."

Section 41-702, I.C., provides that the Department of Insurance shall, as often as it deems expedient, and, at least once in three years, examine into the affairs of a domestic life insurance company; and for such purpose the commissioner may appoint as examiners one or more competent persons not officers of nor connected with any insurance corporation.

Section 41-703, I.C., provides that upon such examination, the commissioner or his deputy or any examiner authorized by him may examine under oath the officers and agents of such corporation. And makes it the duty of the corporation to cause its books and papers to be available for the inspection of the examiners.

Section 41-704, I.C., provides that every such examiner shall make a full and true report to the Insurance Department of every examination made by him, verified by his oath.

Section 41-705, I.C., reads as follows:

"The cost of such examinations shall be paid by the company examined and shall include the reasonable expenses of the department of insurance and the compensation and reasonable expenses of its assistants, or person or persons employed therein. Duplicate receipts showing the entire cost of the examination, authorized by the department, shall be taken and certified to by the company examined, one copy to be retained by the company and the duplicate filed in the office of the depart-

ment of insurance, as a part of the public records. No company, corporation, partnership or individual so examined shall, directly or indirectly, pay by way of gift, gratuity or otherwise any further sum to said commissioner of finance, his deputy, assistants, or other person or persons making said examination, either for services rendered, for extra services, for the purpose of legislation, or for any other pretense whatsoever."

Section 41–708, I.C., provides for the same supervision and examination of foreign companies as of domestic companies. Section 41–709, I.C., provides for the examination of foreign companies at their general offices and reads as follows:

"The department of insurance may, whenever it deems it necessary, either by an official of the department or by a proper person appointed by the department, repair to the general office of such foreign corporation, wherever the same may be, and make an investigation and examination of its affairs and conditions. The department may cancel and revoke the certificate of any such foreign corporation refusing or unreasonably neglecting to comply with the provisions of this section, or to allow the examinations herein provided for to be made, and prevent such corporation from further continuance in business in this state."

Respondent husband was acting under Section 41–709, I.C., in his examinations made at the general offices of foreign companies; and was paid the sums in question as compensation by the insurance companies under the provisions of Section 41–705, I.C.

From the foregoing statutes it would appear that respondent husband must be considered an employee of the State of Idaho in order to be qualified to make the examinations in question and to charge the insurance companies therefor. State ex rel. Dunn v. Ayers, 112 Mont. 120, 113 P.2d 785. However, it does not follow from such fact alone that the income involved is not exempt from taxation under Section 63–3013(b), par. 7, I.C. Such statute does not make any distinction between the earnings of an officer or employee of the state and the earnings of private individuals so far as the exemption is concerned. The comparable federal statute is Title 26 U.S.C.A. § 116, as amended. In defining earned income from sources without the United States which is to be excluded from the gross income of a resident, the federal statute specifically excepts from the exemption the amounts paid by the United States or any agency thereof. Our statute has no comparable exception.

Appellants contend that respondent husband being an employee of the state, the source of the income in question

is the Department of Insurance. The word "sources" when used in statutes dealing with sources of income as compensation for personal services has reference not to the person or entity paying for the services, but to the location where the services are performed. It is generally held that if the income is compensation for labor or services, the place where the labor is performed or services rendered is decisive as being the source of the income. Harding A. L., Double Taxation of Property and Income, p. 157, sec. 33; Holmes Federal Taxes, 6th Ed., pp. 396–397, quoted in Jackling v. State Tax Commission, 40 N.M. 241, 58 P.2d 1167, 1171; Commissioner of Internal Revenue v. Ferro-Enamel Corp., 6 Cir., 134 F.2d 564; Commissioner of Internal Revenue v. Piedras Negras Broadcasting Co., 5 Cir., 127 F.2d 260; Roerich v. Commissioners, 38 B.T.A. 567; Miller v. McColgan, 17 Cal.2d 432, 110 P.2d 419, 134 A.L.R. 1424, and annotation p. 1433.

Appellants next contend that the income of respondents derived from sources outside the state would only be exempt from taxation provided that in earning such income respondents maintained a business situs outside the state, under the provisions of Section 63–3022 and 63–3019, I.C.

Section 63–3019, I.C., in part provides:

"Net income of nonresident individuals, and any corporation subject to tax under this chapter.—a. In the case of a nonresident individual to the extent that he has a business situs in the state of Idaho, or any corporation subject to tax under this chapter, the following items of gross income shall be treated as income from sources within the state of Idaho:

"1. Interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise;

"2. Compensation for labor or personal services performed in the state."

The quoted portion of Section 63–3019, I.C., was part of the original income tax act. Such act being Chapter 2 of the 1931 Extraordinary Session of the Legislature.

Section 63–3013, I.C., prior to 1941, taxed the income of residents derived from all sources both within and without the state. By Chapter 110, 1941 Session Laws, Section 63–3013(b), par. 7 I.C., was added exempting from taxation all income for personal services derived from sources outside the state. After adopting Section 63–3013(b), par. 7, I.C., the 1941 Legislature enacted Section 4, Chapter 178, reading as follows:

"Sec. 4. That Chapter 24 of Title 61 of the Idaho Code Annotated be and the same is hereby amended by adding thereto, immediately following Section 61–2418 of the Idaho Code Annotated, a new section to be known and designated as Section 61–2419A, and reading as follows:

"61–2419A. Determination of taxable income of a resident individual, a trust or estate, a partnership, and a. domestic corporation.—The taxable income of a resident individual, trust or estate, or partnership, of the State of Idaho, to the extent that they have a business situs outside the State of Idaho, and of a domestic corporation of the State of Idaho shall be determined by the method designated in Section 61–2416 Idaho Code Annotated for determining gross income and items deductible from gross income."

Section 61–2419A, I.C.A., is now codified as Section 63–3022, I.C. It will thus be seen that Chapter 24 of Title 61 of the Idaho Code Annotated, of which Section 63–3013(b), par. 7, I.C., had become a part, was amended by the provisions of Section 4, Chapter 178, 1941 Session Laws.

■ Section 63–3013, including(b), par. 7, Section 63–3019 and Section 63–3022, I.C., all deal with taxable income and provide a method for determining the taxable income of a resident from sources without the State of Idaho. They deal with the same subject matter, are in pari materia and must be read together to determine the legislative intent. Nampa Lodge No. 1389 v. Smylie, 71 Idaho 212, 229 P.2d 991; State v. Casselman, 69 Idaho 237, 205 P.2d 1131.

■ The three sections under discussion when taken together show a plan on the part of the Legislature to treat resident taxpayers and nonresident taxpayers on an equal basis. The income of a nonresident for personal services performed within the state to the extent that he has a *business situs* within the state is to be treated as taxable income. On the other hand, the income of a resident for personal services performed outside the state to the extent that he has a *business situs* outside the state is to be exempt from taxation by the state. The plan outlined by the three sections for determination of taxable income is simple, workable and equitable between residents and nonresidents.

■ The apparent contention of respondents that every time a state officer or employee or a private individual crosses the state line and performs personal services, the compensation for such services is exempt from taxation surely could not have been the intention of the Legislature. It is the establishment of a business situs outside the state that brings into play the exemption from taxation. Under the mentioned federal statute the exemption from taxation is only granted where the taxpayer is present in a foreign country for 510 days during any period of 18 consecutive months.

It is not contended here that the state does not have the right to tax all or such portion as it may desire of the income of residents from sources outside the state. Neither are we concerned with the extent of the state's right to tax the income of

a nonresident. See Annotation 130 A.L.R. 1183, at 1203.

The services in question were performed by respondent husband as an examiner designated by the Department of Insurance. The record does not show that he established, attempted to establish or claims to have established a business situs outside the state for the performance of such services. It is unnecessary for us to decide whether respondent husband as an employee of the state could have a business situs outside the state in performing services in connection with his employment.

We conclude the trial court erred in holding that the income of respondents as compensation for services rendered in the examinations at the home offices of foreign insurance companies is exempt from taxation as income by the State of Idaho. The judgment is reversed and the cause remanded to the trial court to make findings of fact on the validity or invalidity of the additional items of income added by the tax collector and on the question of assessment of penalties for fraud or negligence; and to determine the amount of tax due, if any, in accordance with such findings of fact and the views expressed in this opinion and to enter judgment against respondents therefor. Costs awarded to appellants.

TAYLOR, THOMAS and KEETON, JJ., and BAKER, D. J., concur.

On Petition for Rehearing

PORTER, Chief Justice.

The Petition for Rehearing filed by respondents, after due consideration, is denied.

THOMAS, J., and BAKER, D. J., concur.

TAYLOR, Justice (dissenting).

A further study of the issues involved, prompted by the petition for rehearing, impels me to the conclusion that the judgment appealed from should be affirmed. My adherence to the original opinion was induced by the introductory provisions of section 4, chapter 178, of the 1941 Session Laws, which recites that chapter 24 of title 61, I.C.A., is amended by the addition thereto of the section, which is now 63–3022, I.C. That chapter included section 61–2412, I.C.A., which is now section 63–3013, I.C. So the reference to statutes amended includes 63–3013, I.C. However, that is as far as such reasoning will permit one to go. The express reference in section 63–3022, I.C., is to the method of determining "gross income" in section 63–3019, I.C. A reference to this section indicates that it is concerned with the allocation of various deductions to income from sources within and without the state, expressing clearly the purpose of the legislature to apply the same rules for determining the apportionment of such deduc-

tions to both resident and nonresident taxpayers. Both sections deal with "gross income." Whereas, section 63–3013, which defines gross income, unequivocally eliminates income for personal services from sources outside the state from "gross income."

This exemption was enacted at the same session of the legislature which amended the entire chapter by adding section 63–3022. Although the amendment was subsequent in time to the enactment of the exemption, I find nothing in the language of either provision to indicate any intention to limit or modify the unqualified terms of the exemption expressed in subsection (b)7. A study of these three sections manifests clearly that what the legislature intended to do in amending the chapter by the addition of section 63–3022, was to provide a method of prorating and allocating proper deductions in the case of a resident taxpayer having income from sources both in and out of the state, and not to limit the exemption, or modify the definition of gross income, contained in section 63–3013, I.C. Putting it another way, it was not intended to tax the income exempted by subsection (b)7, but to make that income bear its fair share of the deductible expenses which the taxpayer might claim. I think that was all that section 63–3022, I.C., was intended to accomplish. This conclusion is confirmed by subsection 4, par. e of section 63–3019, and by the provisions of section 63–3015, I.C., both of which provide certain consequential penalties for failure of the taxpayer to fully disclose all income not returned for tax purposes, and for failure to supply all information deemed necessary by the commissioner "for the calculation of such deductions and credits." This is a clear indication of the intention of the legislature not to tax income from sources outside the state, but to require the taxpayer to disclose such income and furnish other information necessary to the calculation and apportionment of his claimed deductions and credits.

KEETON, J., concurs.