**TIPTON AND KALMBACH, INC.,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 72–1563.

United States Court of Appeals,
Tenth Circuit.

July 9, 1973.

---

James H. Turner, Denver, Colo. (Stephen A. Weinstein, Denver, Colo., with him on the brief), for appellant.

Richard S. Halberstein, Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, and Thomas L. Stapleton, Dept. of Justice, Washington, D. C., with him on the brief), of counsel, James L. Treece, U. S. Atty., for appellee.

Before LEWIS, Chief Judge, DURFEE *, Judge, Court of Claims, and HOLLOWAY, Circuit Judge.

LEWIS, Chief Judge.

Tipton and Kalmbach, Inc. (taxpayer) appeals from a judgment denying its claim for refund of federal income taxes paid for the fiscal years ending April 30, 1964, 1965 and 1966.

In 1960 and 1962 taxpayer, a Colorado corporation, entered into agreements with the West Pakistan Water and Power Development Authority (WAPDA). Pursuant to the first of these agreements, taxpayer was to perform engineering services incident to the design and construction of certain canals in West Pakistan. Under the second agreement, taxpayer was to perform engineering services incident to reclamation and ground water projects in West Pakistan. Three categories of payments constituted taxpayer's compensation under the two contracts: (1) a fixed monthly fee; (2) reimbursement for certain specified costs including the salaries paid to taxpayer's

* Sitting by designation.

employees; (3) an allowance for indirect and overhead expenses in the amount of 50 percent of the reimbursable salaries. Taxpayer's services under WAPDA contracts were performed by expatriate personnel in Pakistan, Pakistani nationals, employees in taxpayer's Denver office and its two principals, Messrs. Tipton and Kalmbach. Tipton and Kalmbach devoted approximately 20 to 40 percent of their professional time in Pakistan. The remainder of their time was substantially dedicated to work on the WAPDA projects in the Denver office. During the tax years in issue, approximately 95 per cent of taxpayer's income was from the two WAPDA contracts.

The Internal Revenue Service conducted two audits of taxpayer's returns for the years in issue and determined that the claimed foreign tax credits were excessive because taxpayer's income included compensation for services rendered within the United States as well as within Pakistan. Taxpayer paid the alleged deficiencies and this refund litigation ensued.

Section 901 of the Internal Revenue Code, 26 U.S.C. § 901, permits an annual election to credit United States tax liability by the amount of foreign taxes accrued or paid. This foreign tax credit is limited by section 904(a)(2) of the Code to the same proportion of the total United States tax as the foreign taxable income bears to total taxable income. This limitation is best expressed in the following formula:

$$\frac{\text{foreign tax credit}}{\text{total United States tax}} = \frac{\text{foreign taxable income}}{\text{total taxable income}}$$

In the instant case the only disputed variables in this formula are the foreign taxable income and the resultant foreign tax credit.

■ The foreign taxable income in this case is determined by the source of income rule in sections 861(a)(3) and 862(a)(3) of the Code. These sections provide that the source of income is the place where the services are performed. Relying on Commissioner v. Piedras Negras Broadcasting Co., 5 Cir., 127 F.2d

260, taxpayer contends that the services performed in its Denver office were merely incidental to the predominant services rendered in Pakistan and that all of its income was thus from sources outside the United States. Taxpayer's reliance on *Piedras Negras* is misplaced. That case did not involve any services performed in the United States. "[A]ll of the services [the company] rendered in connection with its business were performed in Mexico." Commissioner v. Piedras Negras Broadcasting Co., *supra* at 261. Furthermore, Code sections 861 (a)(3) and 862(a)(3) do not attribute all of a taxpayer's income to the country where most of its services are performed. The undisputed evidence in the instant case demonstrates that taxpayer's services under the WAPDA contracts were partially performed in its Denver office. Consequently, income attributable to such services is treated as income from sources within the United States, I.R.C. § 861(a)(3), and does not constitute foreign taxable income in computing the foreign tax credit limitation in section 904(a)(2) of the Code.

Since taxpayer's services under the WAPDA contracts were rendered in the United States as well as in Pakistan, it is necessary to allocate its income between the domestic and foreign sources. The Internal Revenue Service utilized a payroll cost method of allocation, i. e., apportioning taxpayer's total income between income from sources within the United States and income from sources in Pakistan in the same respective proportions as its payroll costs for services rendered in the United States and its payroll costs for services performed in Pakistan bear to total payroll costs. The district court concluded that the taxpayer failed to establish its right to a method of allocation other than this payroll cost basis. We disagree.

■ Taxpayer is entitled to an allocation on a time basis as provided in Treas.Reg. § 1.861–4(b):

*Amount includible in gross income.* If a specific amount is paid for labor or personal services performed in the

United States, that amount (if income from sources within the United States) shall be included in the gross income. If no accurate allocation or segregation of compensation for labor or personal services performed in the United States can be made, or when such labor or service is performed partly within and partly without the United States, the amount to be included in the gross income shall be determined by an apportionment on the time basis; that is, there shall be included in the gross income an amount which bears the same relation to the total compensation as the number of days of performance of the labor or services within the United States bears to the total number of days of performance of labor or services for which the payment is made. Since taxpayer's services were performed partly within the United States and partly within Pakistan, the second sentence of this regulation specifically directs an allocation on the time basis. Additionally, taxpayer's exhibits 19 and 19A contain sufficient uncontroverted figures to utilize the time basis allocation formula recited in Treas.Reg. § 1.-861–4(b).

■ The government contends that the peculiar facts of this case, while literally within the ambit of Treas.Reg. § 1.861–4(b), render the regulation inapplicable. Similar arguments have been made by the government with respect to the applicability of Treasury regulations in other tax cases and rejected by the courts. *See* McCord v. Granger, 3 Cir., 201 F.2d 103, 106; Petroleum Heat & Power Co. v. United States, 186 Ct.Cl. 486, 405 F.2d 1300, 1303; Weyerhaeuser Co. v. United States, 184 Ct.Cl. 492, 395 F.2d 1005, 1008. The government further contends that utilization of the payroll cost method more accurately reflects the allocation of income between foreign and domestic sources in this case than would the application of the time basis apportionment in Treas.Reg. § 1.861–4(b). The validity of this claim is debatable. Neither system of allocation can reflect with complete exactness

the amount of taxable income and consequently we hold that the Internal Revenue Service should abide by its own regulations when they are not in conflict with an express statutory provision. *See* Coors Porcelain Co. v. Commissioner, 10 Cir., 429 F.2d 1, 5; Brafman v. United States, 5 Cir., 384 F.2d 863, 866; Miller v. Commissioner, 8 Cir., 333 F.2d 400, 403. Treas.Reg. § 1.861–4(b) provides for a reasonable, convenient and expeditious method of allocating income between foreign and domestic sources and does not conflict with sections 861 (a)(3) and 862(a)(3) of the Code. The Internal Revenue Service is thus not free to apply an *ad hoc* method of allocation when Treas.Reg. § 1.861–4(b) does not abuse the allocation issue in this case.

The judgment is reversed and remanded with directions that the district court enter a judgment consistent with this opinion.