Le BEAU TOURS INTER-AMERICA,
INC., Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 73 Civ. 1907.

United States District Court,
S. D. New York.

March 10, 1976.

Supplemental Opinion May 18, 1976.

Lynton, Klein, Opton & Saslow, New York City, for plaintiff; Frank G. Opton, New York City, of counsel.

Robert J. Fiske, Jr., U. S. Atty., New York City, for defendant; William R. Bronner, Asst. U. S. Atty., New York City, of counsel.

GAGLIARDI, District Judge.

This case raises a question of first impression under Section 921 of the Internal Revenue Code of 1954 (the Code). The parties have stipulated to certain facts and both have cross-moved for summary judgment.

The plaintiff, Le Beau Tours Inter-America, Inc. ("Le Beau Inter-America") sues for a refund of more than $100,000 in taxes it paid for the years 1966 through 1968 pursuant to a deficiency notice from the I.R.S. for those years. The deficiency resulted from the government's disallowance of plaintiff's claim that it qualified under Section 921 of the Code as a Western Hemisphere trade corporation (WHTC) and thus was entitled to certain deductions provided for in section 922 of the Code. The plaintiff contends that the income from its travel business is derived solely from commissions paid by hotel and tour operators in Latin America, and thus it qualifies as a WHTC under section 921. The Government on the other hand claims that Le Beau Inter-America does not so qualify because (1) less than 95% of its income comes from sources outside the United States, and (2) that it is a sham corporation created solely for the purposes of tax avoidance by its parent company, Le Beau Tours, Inc., which does the same kind of business worldwide. For purposes of this motion, the Government is not pressing the sham corporation claim, which both parties agree raises factual questions inappropriate for summary judgment.

So far as relevant, the following facts were agreed upon by the parties. Le Beau Inter-America is a New York corporation organized in 1966 for the sole purpose of qualifying as a WHTC in order to permit Le Beau Tours, Inc. to obtain a deduction under section 922 on certain portions of its Latin American operations. Le Beau Inter-America arranged Latin American package tours to be offered to American tourists, and then through contacts with local hotels and tour operators or guides arranged to have the necessary hotel accommodations and tourist services provided. The American customer would pay Le Beau Inter-America in the United States the full retail price for these services and Le Beau Inter-America would then remit that amount less a certain percentage—which it denominated as a "commission"—to the local hotel or tour operator who actually provided the service. Le Beau Inter-America personnel or local agents acting on their behalf would inspect the local hotels, and presumably make arrangements with local tour operators. Le Beau Inter-America also maintained facilities in the various countries involved so that American tourists abroad could seek assistance from its representatives. At all times, however, the local hotel and tour service operators were independent contractors not under plaintiff's legal control other than by contract.

Le Beau Inter-America in most instances acted as a wholesale travel agent who marketed its services through retail travel agents in the United States. It maintained its New York office in Le Beau Tours, Inc.'s New York office and its bookkeeping and other clerical work was performed by staff members of Le Beau Tours, Inc. in New York. Le Beau Inter-America paid Le Beau Tours, Inc. an annual lump sum for these services.

Section 921 of the Code defines a WHTC as a domestic corporation all of whose business is done in North, Central or South America or in the West Indies which satisfies the following conditions:

(1) 95 percent or more of its gross income for the three year period immediately preceding the close of the taxable year is derived from sources without the United States; and

(2) 90 percent or more of its gross income from such period or such part thereof is derived from the active conduct of a trade or business. Concededly, Le Beau Inter-America meets the second requirement. It is the first that is here in issue.

Plaintiff contends that all its income is derived from commissions paid to it by hotel and tour operators in Latin America for services rendered there, and therefore the source of more than 95 percent of its income is outside the United States. The Government on the other hand claims that the source of a substantial portion of the plaintiff's income is from within the United States. According to the Government, Le Beau Inter-America's operations must be characterized according to one of two alternative theories—either (1) it is a sales business selling in the United States wholesale hotel and tour space in Latin America or (2) it is a service business providing services which are performed both in the United States and in Latin America. On either theory, the Government asserts more than 5 percent of the plaintiff's income must be considered derived from sources within the United States.

■ While this Court does not believe that the plaintiff can properly be considered a wholesale seller of hotel space and tours, it does agree with the Government that the plaintiff is engaged in a service business in which services are performed both in the United States and aboard. Therefore, this Court holds that a determination allocating the amount of income derived from sources within and without the United States must be made.

The plaintiff here under the stipulated facts did considerably more than just buy and sell blocks of hotel and tour space. It undertook personal inspections of local hotels, the operators and their capabilities and also had some role in developing and putting together completed package tours. Furthermore, it maintained representatives in various countries to assist American tourists abroad for whom it had arranged services. This broad range of activities indicates that plaintiff was engaged in a service business—arranging and packaging tour programs for American customers.

■ The question remains, however, as to the source of the income derived from this service business. The term "sources outside the United States" is nowhere defined in Section 921. The regulations issued by the Treasury Department under Section 921 state that the amount of income from sources within the United States and without the United States is to be determined under the rules provided for in Code Sections 861–864 and the regulations thereunder. Treas.Reg. § 1.921–1(c). Those sections provide that "compensation for labor or personal services performed within the United States" is income from sources within the United States, Code Section 861(a)(3), and that compensation for labor and personal services performed outside the United States is income from sources outside the United States, Code Section 862(a)(3).[1] Therefore, where services are performed both in the United States and abroad, the income from those services is derived partly from sources within and partly without the United States. *Tipton and Kalmbach, Inc. v. United States*, 480 F.2d 1118 (10th Cir. 1973). Treas.Reg. § 1.861–4(b)(2), states that for years prior to 1975:

". . . when such labor or service is performed partly within and partly without the United States, the amount to be included in the gross income shall be determined by an apportionment on the time basis; that is there shall be included in the gross income an amount which bears the same relation to the total compensation as the number of days of per-

[1] Section 863(b) of the Code provides that gross income from sources partly within and partly without the United States may be apportioned according to processes or formulas of general apportionment prescribed by the Secretary or his delegate. Although the statute states specifically that "gains, profits and income— . . . . from transportation or other services rendered partly within and partly without the United States, . . . . ." are to be treated as derived from sources partly within and partly without the United States, Code Section 863(b)(1), no regulation under this section applies directly to services of the type in question here. Presumably, the general rules on the source of income derived from sources enunciated in sections 861 and 862 thus apply. *Commissioner v. Piedras Negras Broadcasting Co.*, 127 F.2d 260 (5th Cir. 1942); *Tipton and Kalmbach, Inc. v. United States, supra.*

formance of the labor or service within the United States bears to the total number of days of performance of the labor or service for which the payment is made."

That regulation was changed by the Treasury Department to provide that for years after 1975, the amount of gross income from services performed partially within and partially without the United States "shall be determined on the basis that most correctly reflects the proper source of income under the facts or circumstances of the particular case." Treas.Reg. § 1.861–4(b)(1).

▮ In this case the plaintiff contends that all services are performed in Latin America and all its revenue is derived from the local hotel and tour operators for whom it is in essence an agent paid a commission. This court, however, believes that the nature of the plaintiff's activities should not be characterized so narrowly. By its own admission the plaintiff developed package tours and provided assistance to American tourists while in Latin America at least in part through its own representatives. It also on its own account performed the services of selecting, administering and to some extent supervising Latin American travel arrangements and tours for American tourists. In performing these services, it was far more than an agent for its local Latin American contacts. Rather it was a separate service business deriving income from its own performance of certain important and necessary services to its customers. To the degree that these services were performed by the plaintiff or its agents in Latin America the income derived therefrom was from sources outside the United States. To the degree, however, that the plaintiff carried on any activities in connection with the administration, development or execution of the Latin American tours

that gave rise to its income in the years in question in the United States, this would be income from United States sources.

Although the court agrees with the plaintiff that as a general rule a taxpayer may divide his business by forming a separate subsidiary organized solely for the purpose of taking advantage of the WHTC provisions, *Commissioner v. Pfaudler Inter-American Corp.,* 330 F.2d 471 (2d Cir. 1964); Revenue Ruling 70–238, 1970–1 Cum.Bull. 61, Le Beau Inter-America may not void having income attributable to services performed in the United States for the sole benefit of its Latin American operations characterized as United States source income by contracting for those services with its parent company, Le Beau Tours, Inc. Here, Le Beau Inter-America had to see that these necessary functions were carried out in order to provide the services to its customers from which it derived its gross income. Whether they were provided by employees paid by it directly or employees of its parent company is immaterial to a determination of the place of the performance of the services for purposes of a source of income allocation.[2]

▮ Thus, all time spent by personnel of Le Beau Inter-America or Le Beau Tours, Inc. in performing services which related to the Latin American tours from which Le Beau Inter-America received its income must be considered in determining whether more than five percent of its income was derived from sources within the United States. This includes time spent promoting and advertising tours which Le Beau Inter-America was operating and administrative and clerical work in connection with the tours.

▮ The Government contends that the plaintiff has conceded that it cannot under these circumstances meet the 95 percent

2. *Commissioner v. Piedras Negras Broadcasting Co, supra,* whatever its validity after *Tipton and Kalmbach* is not in conflict with the decision here. There the services were all found to be rendered in Mexico with only minor insignificant activities being rendered in the United States. Here it appears that a fairly substantial portion of the activities which generated Le Beau Inter-America's income—as distinguished from that of its local hotel and tour operators—took place in the United States.

source of income test of Section 921. There is, however, no such concession in the record, and thus an evidentiary hearing on this issue must be held. At that hearing plaintiff will have to show that more than 95 percent of the time spent by persons performing services in connection with Le Beau Inter-America's tours took place outside the United States. In computing the amount of services so performed, only those services performed which brought income to Le Beau Inter-America—not its ground operators—must be considered.

Accordingly, both motions for summary judgment are denied.

So ordered.

### SUPPLEMENTAL OPINION

Pursuant to a memorandum decision of this court dated March 10, 1976, the parties have now stipulated that more than 5% of the time of the officers of Le Beau Tours Inter-America, Inc., the plaintiff, were spent within the United States. The government therefore renews its motion for summary judgment. The motion is granted.

■■■ The plaintiff argues that this court's previous decision is erroneous insofar as it holds that activities which generate plaintiff's income taking place in the United States are to be considered in determining the source of its income for purposes of Section 921 of the Internal Revenue Code. In the previous decision this court found that under the circumstances here all activities of plaintiff's officers in the United States in connection with plaintiff's Latin American tours should be considered in determining whether plaintiff derived more than 5% of its gross income from sources within the United States. This finding was based on the determination that plaintiff was engaged in a separate service business in which the services rendered consisted primarily of the arrangement, packaging and promotion of Latin American tours. Plaintiff has now stipulated that more than 5% of the work done by its officers and employees in the arrangement, packaging and promotion of the tours was done in the United States. As this work, in this court's view, constituted the performance of the services for which plaintiff was compensated, more than 5% of those services were clearly performed in the United States. Under the accepted rule that the situs of the income producing service is the source of the income from a service business, more than 5% of the plaintiff's income was clearly from sources within the United States. The cases cited by plaintiff in which there was activity in the United States that did not give rise to United States source income all involved the sale of goods with title passing abroad, not the rendition of services performed partially within the United States.

This court's previous decision was not intended to be a rejection of the principles of law set forth in *Commissioner v. Piedras Negras Broadcasting Co.,* 127 F.2d 260 (5th Cir. 1942). The confusion of plaintiff's counsel on this point may result from the inadvertent omission of the word "not" from the first sentence of the second footnote of the earlier decision. That sentence should read "*Commissioner v. Piedras Negras Broadcasting Co., supra,* whatever its validity after Tipton and Kalmbach is *not* in conflict with the decision here." The earlier decision is amended to correct this typographical error.

Defendant's motion for summary judgment dismissing the complaint is thus granted.

So ordered.