TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND
HELPERS, LOCAL 45, PLAINTIFFS AND APPELLANTS, *v.*
MONTANA LIQUOR CONTROL BOARD OF THE STATE
OF MONTANA ET AL., DEFENDANTS AND RESPONDENTS.

No. 11880.
Decided June 24, 1970.
471 P.2d 541.

Hilley & McKittrick, Great Falls, D. Patrick McKittrick, argued, Great Falls, for appellants.

David E. Jackson, Helena, for respondents.

PER CURIAM.

This is a declaratory judgment action by a labor union against the Montana Liquor Control Board seeking a determination of whether certain warehouse employees of the Board are subject to an annual salary limitation of $6,600 or whether they are eligible for a discretionary salary increase not exceeding 5% of their previous annual salary without such $6,600 limitation.

The district court of Lewis and Clark county, the Hon. Victor H. Fall, district judge, sitting without a jury, entered judgment that the Board had no authority to grant such employees any increase in salary that would result in an annual salary exceeding $6,600. From this judgment, the Union appeals.

The underlying issue on this appeal is whether the $6,600 salary ceiling imposed by section 4-108, R.C.M.1947 as amended, is impliedly repealed by the provisions of Extraordinary House Bill No. 4 of the 1969 legislature.

Plaintiff in this case is Teamsters, Chauffeurs, Warehousemen and Helpers, Local 45, a labor union which is the sole collective bargaining agent for the warehouse employees of the Montana Liquor Control Board at the state liquor warehouse in Helena. Defendants are the Montana Liquor Control Board, its members, and its administrator. For simplicity, plaintiff is referred to herein as the Union and defendants as the Board.

There being no factual dispute, the case was submitted to the district court on an agreed statement of fact. As no facts beyond those previously mentioned are significant, further factual elaboration is unnecessary. The legal issue as defined by the

parties "involves an interpretation of and the relationship of Section 4-108, R.C.M.1947, and Extraordinary House Bill No. 4 upon which there is a substantial difference of opinion", the actual controversy being "whether the liquor warehouse employees may receive a salary only up to $6,600 per year or whether they may receive a salary increase not exceeding five percent (5%) of the annual salary received during the fiscal year ending June 30, 1969."

On April 22, 1970 the district court entered its findings of fact, conclusions of law, and judgment in favor of the Board. The judgment held "That Extraordinary House Bill No. 4 * * * is not in conflict with Section 4-108, R.C.M.1947" and "That the Montana Liquor Control Board is not authorized to apply a 5% increase, or any increase, to annual salaries of 'any other employees of the board in the sum not exceeding six thousand six hundred dollars ($6,600.00) * * *' as set forth in said Section 4-108, R.C.M.1947, if such employee is paid at the rate of $6,600.00 per year." The union appeals from this judgment.

The issue on this appeal as heretofore stated is purely a question of statutory construction. Accordingly, our starting point is the two statutes involved.

Section 4-101, R.C.M.1947 as amended, provides in its pertinent parts:

"The board shall fix the following salaries of its employees at such sums as it deems advisable, to wit: * * * the salary of any other employee of the board in the sum not exceeding six thousand six hundred dollars ($6,600) per year. * * *"

It is acknowledged by all parties that the warehouse employees involved in the instant case fall within the term "any other employee of the board" as used in this statute.

Extraordinary House Bill No. 4 is a bill appropriating funds for the operations of various state agencies, one of which is the Montana Liquor Control Board. It contains, among other items, an appropriation for the personal services of its em-

ployees. Section 1, subsection 2 of that bill provides in pertinent part as follows:

"The term 'personal services' means all salaries and wages of full-time, part-time, and temporary employees of the state and includes the state's contribution for social security; employees' retirement, industrial accident insurance, and any authorized health insurance. Employees' annual salary increases for the fiscal year ending June 30, 1970, shall not exceed five percent (5%) of the annual salary received during the fiscal year ending June 30, 1969, unless promoted to a position with additional responsibilities, duties, or both.  *  *  *"

The Union advances several arguments in support of its basic position that the $6,600 salary ceiling imposed by section 4-108 is amended by implication by the discretionary 5% annual salary increase contained in Extraordinary House Bill No. 4.

Initially the Union contends that because Extraordinary House Bill No. 4 is a later enactment on the same subject it controls over the earlier enactment, section 4-108, and that Extraordinary House Bill No. 4 is a special statute which controls over the provisions of section 4-108, the general statute. The Union argues that these rules of statutory construction must be applied here to give effect to the intention of the legislature.

While we recognize that the intention of the legislature is controlling (Section 93-401-16, R.C.M.1947), and that various rules of statutory construction have been developed for determining legislative intent (Dunphy v. Anaconda Co., 151 Mont. 76, 438 P.2d 660), the two cited rules of statutory construction have no application to the instant case. They apply only where the two statutes under consideration are inconsistent with and repugnant to each other. "The general rule is that for a subsequent statute to repeal a former statute by implication, the previous statute must be wholly inconsistent and incompatible with it. (Citing cases)". Fletcher v. Paige, 124 Mont. 114, 119, 220 P.2d 484, 486, 19 A.L.R.2d 1108. And, assuming arguendo that Extraordinary House Bill No. 4 is a special stat-

ute and section 4-108 a general one, "Where one statute deals with a subject in general and comprehensive terms and another deals with a part of the same subject in a more minute and definite way, *to the extent of any necessary repugnancy between them* the special will prevail over the general statute. (Citing cases)" Emphasis supplied. In re Stevenson, 87 Mont. 486, 498, 289 P. 566, 570. And, as will be developed later in this opinion, the two statutes under consideration are not inconsistent or repugnant, but can be read together as a harmonized and homogeneous whole giving effect to each. Thus, appellant's initial argument fails.

■■ Secondly, the Union argues that the language of Extraordinary House Bill No. 4 includes all employees thereby indicating a legislative intent to permit everyone a 5% annual salary increase. It is true that the discretionary 5% annual increase applies to all employees. But it does not follow that the legislature intended to permit every employee such discretionary salary increase without regard to existing statutory wage ceilings. The legislature is presumed to have enacted law with existing law in mind. In re Wilson's Estate, 102 Mont. 178, 56 P.2d 733, 105 A.L.R. 367. And, as this Court said in London Guaranty & Accident Co., Ltd. v. Industrial Accident Board, 82 Mont. 304, 310, 266 P. 1103, 1105, later quoted with approval in Fletcher v. Paige, supra:

"The presumption is that the Legislature passes a law with deliberation and with a full knowledge of all existing ones on the same subject, and does not intend to interfere with or abrogate a former law relating to the same matter unless the repugnancy between the two is irreconcilable."

As will be developed later herein, the two statutes in question are not repugnant and irreconcilable Thus the presumption controls and appellant's argument is defeated.

Next the Union contends that section 4-108 relates to *annual salaries* while Extraordinary House Bill No. 4 relates to *an increase in annual salaries.* As a result, the Union argues, the

latter enactment must be construed to effectuate the legislative policy of granting salary increases and must not be construed to defeat such legislative purpose. This contention is illusory. While section 4-108 does relate to annual salaries, it also relates to salary ceilings and expressly imposes fixed salary ceilings on employees in various job classifications. The contended legislative policy of granting permissive salary increases in no way evidences a legislative intent to abolish statutory salary maximums.

The next argument urged upon us that Extraordinary House Bill No. 4 must be construed to effectuate legislative recognition that in this day and age a $6,600 annual salary is insufficient to raise a family and therefore the legislature authorized annual salary increases to insure a competent, productive and stable work force. This contention would find a better home at the collective bargaining table or in legislative halls. To the extent that it is a legal issue rather than an economic one, it is bottomed on the premise that the legislature recognized these financial considerations and repealed the statutory wage ceilings. If this be true, why is no repeal contained in Extraordinary House Bill No. 4? Why is the 5% salary increase provision which is included therein permissive and discretionary only? Where is there any indication of legislative intent to abolish statutory wage ceilings? There is simply nothing to indicate the legislative recognition and policy contended by the Union.

But, the Union argues, if Extraordinary House Bill No. 4 is not construed to permit 5% annual salary increases, this enactment is of no force and effect as the employees are in no better position with this legislation than without it. The contention is that prior to Extraordinary House Bill No. 4 they would receive up to $6,600 and now they still can receive only $6,600, so what reason is there for its enactment. The Union argues that the legislature is presumed not to have enacted useless or meaningless legislation.

This argument is based on a false premise, i.e. that the sole

legislative objective of Extraordinary House Bill No. 4 was to repeal existing statutory wage ceilings. Extraordinary House Bill No. 4 is a bill appropriating funds for the operation of various state agencies during the biennium and its purpose as expressed in its title is simply "AN ACT TO APPROPRIATE MONIES TO CERTAIN STATE AGENCIES FOR THE BI-ENNIUM ENDING JUNE 30, 1971". While we need not reach the constitutional issue therein included for determination of this case, the fact remains that the primary purpose of this legislation is the appropriation of operating funds for certain state agencies, one of which is the Montana Liquor Control Board. Nowhere therein contained is any reference to repeal of existing statutory wage ceilings. While the text of the act permits discretionary annual 5% salary increases, the evident object thereof is to permit such increases within existing maximum salary limitations. For example, if a certain warehouse employee was receiving an annual salary of $6,000 prior to enactment of this bill, the Board in its discretion could grant him a salary increase of 5% or $300 for the first year of the biennium and still remain within the $6,600 salary ceiling. Thus the provisions of Extraordinary House Bill No. 4 and section 4-108, R.C.M.1947, can be read together and harmonized, giving full effect to the provisions of each, without any irreconcilable conflict or repugnancy between the two.

This is exactly what the law requires in construing the meaning of the two acts. Section 93-401-15, R.C.M.1947, provides in its material parts:

"In the construction of a statute * * *, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all"

This Court, in the leading case of Fletcher v. Paige, supra, further summarized the law which we hold to be controlling in the instant case in this language:

"Every word, phrase, clause, or sentence employed is to be considered and none shall be held meaningless if it is possible to give effect to it. (Citing cases.)

\* \* \* \* \* \* \* \* \* \*

"It will not be presumed that a subsequent enactment of the legislature intended to repeal former laws upon the subject, when such former laws were not mentioned. 'It is our duty to reconcile the statutes if it appears possible to do so, consistent with legislative intent. We bear in mind the rule that an implied repeal results only from an enactment, the terms and necessary operation of which cannot be harmonized with the terms and necessary effect of an earlier act. (Citing cases.)' "

Finally, it is pointed out that the salary of the administrator of the Board is limited to $12,500 by the provisions of Extraordinary House Bill No. 4 whereas such salary is limited to $11,500 in section 4-108. According to the Union, this constitutes a repeal by implication of the latter statute by the former. Thus, the Union says, it is inconsistent and unwarranted to hold that there is not a similar repeal by implication in the case of the warehouse employees in the instant case.

There would be some vitality to this argument if there were a repeal by implication of the salary ceiling of the administrator of the board but there is not. Extraordinary House Bill No. 4 contains this express provision: "The head of this agency shall not receive a salary in excess of $12,500 for either year of the biennium ending June 30, 1971." On its face, this purports to be an express repeal and no repeal by implication is involved. As no such language is contained in the bill relative to warehouse employees, no parallel can be drawn.

For the foregoing reasons, we hold that the Board is not empowered to grant its employees in the state liquor warehouse in Helena any discretionary salary increase that would result in an annual salary in excess of $6,600. We base this decision on our holding that the provisions of Extraordinary House Bill No. 4 of the 1969 legislature permitting a discretionary 5%

annual increase in salary do not amend the statutory wage ceiling of $6,600 for such employees contained in section 4-108, R.C.M.1947 as amended.

The judgment of the district court is affirmed.