No. 12297

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

FRED LLOYD ROMERO,

Defendant and Appellant.

---

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Robert H. Wilson, Judge presiding.

Counsel of Record:

For Appellant:

Berger, Anderson, Sinclair and Murphy, Billings, Montana
James J. Sinclair argued, Billings, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Jonathan B. Smith, Assistant Attorney General, argued,
Helena, Montana
Harold F. Hanser, County Attorney, Billings, Montana
Clifford E. Schleusner, Deputy County Attorney, appeared,
Billings, Montana
G. Todd Baugh, Billings, Montana

---

Submitted: January 24, 1973

Decided: FEB 7 - 1973

Filed: FEB 7 - 1973

Thomas J. Kearney

Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

On February 7, 1972, defendant, Fred Lloyd Romero, was charged by information with the crime of robbery. He plead not guilty and his trial was held on April 5, 1972, and on April 6, 1972, the jury returned a verdict of guilty of robbery. On April 14, 1972, the district court of Yellowstone County sentenced defendant to eighteen years in the Montana state prison. From this judgment and sentence the defendant has appealed.

From the record it appears that shortly before 2:00 a.m. on February 4, 1972, Mrs. Mary Cipech, manager of the Broken Drum Bar, closed the business and proceeded to her car to go home. As she left the bar she noticed a man standing near the motel next door. When she unlocked the door to her car a man inside pointed a gun at her; she screamed and began running away from the automobile. As she was fleeing, the man standing near the motel approached her, demanded her purse and grabbed it away from her as she either fell or was pushed to the ground. Mrs. Cipech observed two men run to and enter an old, white station wagon. Both of these men had covered their faces with ski-type "masks".

A few minutes later Mrs. Cipech saw Jack Hyde, a merchant policeman, driving on the highway in front of the bar, and she flagged him down. Hyde helped Mrs. Cipech into his patrol car and listened to the story of the robbery. Hyde radioed the information to the sheriff's office. Hyde had observed an old white station wagon a few moments earlier driving towards downtown Billings.

That same night Officer Wamsley and Detective Brennan were patrolling in an unmarked car. They heard the radio report of Jack Hyde and shortly thereafter spotted a vehicle match-

- 2 -

ing the description of the getaway vehicle. The police started to follow the station wagon when they noticed a highway patrol car parked on the side of the road and a request was made to the highway patrolman to stop the station wagon. As the station wagon halted, one person jumped out of the vehicle and fled on foot. The defendant was apprehended in the car. While following the suspect vehicle, Officer Wamsley noticed the passenger in the right front seat hand an object to the person sitting in the rear seat.

When one suspect fled the car on foot, Detective Brennan pursued and apprehended him and an immediate search of the suspect produced a loaded .32 caliber revolver. Another revolver was found at the scene of the arrest of the three suspects.

The three suspects were booked at the jail during the shift of jailer Dan Korber. At 6:00 a.m. jailer Korber found a ski-type mask in the jail near the booking area. This ski-type mask was received into evidence over defendant's objection. Another ski-type mask, identified by Mrs. Cipech as the type worn by the robbers was found beneath the suspects' vehicle at the point of their arrest. This mask was also received in evidence.

During the trial of defendant, the county attorney asked defendant on cross-examination, "Have you ever been convicted of a felony or felonies?" Defendant answered, "Yes", and the inquiry was then stopped. During his final argument, the county attorney said, "The defendant testified that he had been convicted of a felony. Now that doesn't mean that he is to necessarily not be believed just because of that, it just means that that is something for you to consider in weighing the testimony and his credibility and that's what the instructions that the

Court has given to you say." Later he commented, after a review

of the facts incriminating the defendant, that "Mr. Broderick

and Mr. Romero live up to that old adage, 'thick as thieves.'"

There was no objection to either statement on the part of de-

fendant.

On the settlement of instructions defendant's counsel

objected to court's proposed instruction No. 1, which was given

as instruction No. 5. We will later refer to its applicability

and we quote it:

> "Upon cross examination of the defendant the
> Deputy County Attorney asked the question of
> whether or not the defendant had been convicted
> of a felony or felonies. To that question the
> defendant answered yes. The last portion of
> that question posed by the Deputy County Attorney
> relating to more than one felony conviction was
> an improper question and the defendant's answer
> should not be taken by you as being any inference
> or admission whatsoever that he has been con-
> victed of more than one felony and you are to
> totally disregard any reference in the question
> to more than one felony conviction."

Defendant contends the State may not show a prior felony

conviction as authorized under section 93-1901-11, R.C.M. 1947,

to impeach him because of the provisions of our new statute,

section 95-1506, R.C.M. 1947, which allows the State to seek

increased punishment by reason of a prior felony conviction,

contending that section 93-1901-11 has been amended so as to

prohibit such a procedure.

Since the first issue presented is whether or not it

was reversible error to permit the State to impeach defendant's

testimony by the use of a prior felony conviction we will set

out the various statutes before we begin our discussion of this

issue. They state:

> Section 93-1901-11, R.C.M. 1947:
>
> "A witness may be impeached by the party against
> whom he was called, by contradictory evidence
> or by evidence that his general reputation for
> truth, honesty, or integrity is bad, but not by

evidence of particular wrongful acts, except
that it may be shown by the examination of
the witness, or the record of the judgment,
that he has been convicted of a felony."
(Emphasis supplied.).

Section 94-4723, R.C.M. 1947:

"A person convicted of any offense is notwith-
standing a competent witness in any cause or
proceeding, civil or criminal, but the convic-
tion may be proved for the purpose of affecting
the weight of his testimony, either by the
record or by his examination as such witness."
(Emphasis supplied).

Section 95-1506, R.C.M. 1947:

"When the state seeks increased punishment of
the accused as a prior convicted felon under
section 94-4713, notice of that fact must be
given in writing to the accused or his attorney
before the entry of a plea of guilty by the
accused, or before the case is called for trial
upon a plea of not guilty.  Such notice must
conform to the following provisions:

"(a)  The notice must specify the prior con-
victions alleged to have been incurred by the
accused.

"(b)  The notice and the charges of prior
convictions contained therein shall not be made
public nor in any manner be made known to the
jury before the jury's verdict is returned upon
the felony charge provided that if the defendant
shall testify in his own behalf he shall never-
the less be subject to impeachment as provided
in section 93-1901-11, R.C.M. 1947, as amended.

"(c)  If the accused is convicted upon the
felony charge, the notice, together with proper
proof of timely service, shall be filed with the
court before the time fixed for sentence.  The
court shall then fix a time for hearing with at
least three (3) days' notice to the accused.

"(d)  The hearing shall be held before the
court alone.  If the court finds any of the
allegations of prior conviction true, the accused
shall be sentenced under the provisions of sec-
tion 94-4713."  (Emphasis supplied).

Section 95-2212, R.C.M. 1947:

"All sentences under this chapter shall be imposed ex-
clusively by the judge of the court."  (Emphasis supplied).

The rules regarding use of prior felony convictions for

purposes of impeachment have been established for a long period of

time.  See State v. Schnepel, 23 Mont. 523, 59 P. 927.  State
v. Coloff, 125 Mont. 31, 231 P.2d 343, reviewed these rules
extensively.  In that case the Court states:

> "A defendant in a criminal case, if he is sworn
> and testifies, is subject to the same rules of
> cross-examination and impeachment as any other
> witness.  [Citing authority.]
>
> "If the defendant does not take the stand, a
> prior conviction may not be shown to impeach
> him.  [Citing authority.]"

An examination of the statutes set out above indicates
that the legislature in no way intended to alter the long-estab-
lished rules concerning use of prior felony convictions for im-
peachment.  When the State seeks increased punishment of a prev-
iously convicted felon, it must give notice to such defendant
before he pleads guilty, or before he goes to trial if he pleads
not guilty.  Since the new criminal procedure code removed all
sentencing functions from the jury and placed them exclusively
with the court, section 95-2212, R.C.M. 1947, there is no longer
any reason for the jury to learn of the prior felony convictions
of a defendant for purposes of sentencing.  The legislature
enacted subsection (b) of section 95-1506, R.C.M. 1947, to in-
sure that the jury is not made aware of the notice that the
State is seeking increased punishment where the defendant has
a prior felony record.

However, in accordance with section 93-1901-11 and
section 94-4723, R.C.M. 1947, and long-standing case law rules
connected therewith, an exception is made in the case of a crim-
inal defendant who chooses to take the stand in his own behalf;
therefore, he is subject to the same rule as any other witness
and his testimony may be impeached by the showing that he was
previously convicted of a felony.

Subsection (b) of section 95-1506, R.C.M. 1947, does
not change any law relative to informing the jury of a defendant's

prior record for impeachment purposes. The statute merely states that any notice that the State gives of prior convictions may not be used against the defendant at trial, but this record may still be used, to impeach his testimony, in the event that he decides to testify in his own behalf.

To argue that subsection (b) of section 95-1506, R.C.M. 1947, was intended to prohibit the State from advising the jury in any manner that the defendant had been previously convicted of a felony, is to read the words of the statute out of context. The intent of the legislature is to conform to the long-standing rules concerning impeachment of criminal defendants by prior felony convictions. If the legislature had intended to make a substantive change in the law, this Court does not believe that such a change would have been placed in a statute dealing with the notice required when the State seeks increased punishment of a previously convicted felony. The subsection in question was intended to change the law with regard to the jury's learning of a prior conviction when increased punishment is sought, but also to reiterate the exception that has long been established, that such records may be used for impeachment of a criminal defendant who takes the stand.

This interpretation is consistent with a search for truth and also with the protection of rights of the defendant.

The second issue presented to this Court is whether or not the method employed by the State in proving defendant's prior conviction and the comments made by the State in the closing argument were prejudicial error.

In Coloff, at p. 35, this Court approved the following method in the use of a prior felony conviction for impeachment purposes:

> "When the credibility of a witness is attacked under these statutes it has long been the uniform trial practice in Montana to ask the

> witness, on cross-examination, <u>in substance</u>,
> 'Have you ever been convicted of a felony?'
> If the answer is 'Yes,' further examination
> along this line is foreclosed. If the answer
> is a denial, the conviction can then be shown
> by the record of the judgment.
>
> "This is sound practice and should be followed.
> The purpose of the statutes, weakening the
> credibility of the witness, is satisfied and
> chance for error is eliminated. It is the
> natural, practical and best way of handling
> the matter." (Emphasis supplied).

In this case the deputy county attorney added the words "or felonies" to the question. When the question was answered "Yes" by the defendant, the deputy county attorney showed that he was complying with the law by immediately stopping the inquiry at that point. Since the prosecutor complied in substance and almost verbatim with the method approved by this Court, we find no prejudicial error was committed.

Also, the court's instruction No. 5, in our opinion, cured any prejudice that might have existed in the minds of the jurors in regard to the addition of the words "or felonies" to the question posed by the deputy county attorney.

The State did not commit any error when the deputy county attorney remarked that the defendant had admitted having committed a felony and the jury should consider that admission in their deliberations as affecting the credibility of defendant's testimony.

To review the facts that strongly pointed to the guilt of the defendant of the robbery charged and then comment that the perpetrators, including the defendant, were "thick as thieves", is not to comment on the past record of the defendant but merely to argue that the defendant was guilty of this robbery. To argue that the defendant was a thief, that he committed the robbery in question, was certainly the only function of the State

in the closing argument. No error was committed when the prosecutor made a reference to the defendant and a co-defendant as being "thick as thieves". We note that different counsel appears on appeal than at trial. Trial counsel did not object anywhere, nor, from the record, does it appear even noted the comment.

This Court also notes the existence of section 95-2425, R.C.M. 1947, which states:

> "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.* * * "

In construing this statute, this Court has said in State v. Gallagher, 151 Mont. 501, 506, 445 P.2d 45:

> " * * * If there was any error at all it was merely technical, and there is a long standing rule in this jurisdiction--based at the time of the instant trial, on section 94-8207, R.C.M. 1947, which has since been replaced by section 95-2425--that technical errors or defects will not provide a basis for reversal in a criminal prosecution."

We find that any error that might have existed was merely technical in nature and definitely not sufficient to cause a reversal. The defendant was convicted by the evidence produced by the State. Since the defendant has failed to demonstrate to this Court any prejudice the conviction must be affirmed.

The final issue presented to this Court on appeal is whether or not the admission of the ski-type mask found in the jail was reversible error.

Long ago this Court stated in State v. Byrne, 60 Mont. 317, 325, 199 P. 262:

> "'Weapons, tools, bullets, instruments, or other articles which appear from other evidence to have been employed in the commission of the crime are admissible in evidence.'"

The ski-type mask objected to by the defendant in this case "appeared from other evidence to have been used in the crime."

Dan Korber, the jailer, testified that he had been through the booking area when he came on shift at 12:00 midnight and that the only person booked in between midnight and 8:00 a.m. was the defendant and the co-defendants in the robbery.

At 6:00 a.m., shortly after taking the defendant to the booking area, while returning Romero to his cell, Korber found the ski-type mask which was admitted in evidence.

Sufficient evidence existed in the record to allow the district court to admit the ski-type mask into evidence. The weight to be given the exhibit was within the province of the jury.

The judgment of the district court is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Associate Justices

- 10 -