No. 13475

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

CARL GAFFORD,

Defendant and Appellant.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable Edward Dussault, Judge presiding.
*Jack L. Green*

Counsel of Record:

For Appellant:

Edward A. Cummings argued, Missoula, Montana

For Respondent:

Hon. Michael Greely, Attorney General, Helena,
Montana
Dennis Moreen argued, Assistant Attorney General,
Helena, Montana
Richard P. Heinz argued, County Attorney, Polson,
Montana

---

Submitted: January 19, 1977

Decided: MAY 3 1977

Filed: MAY 3 1977

*Thomas J. Kearney*
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant was charged with two counts of sexual intercourse without consent causing bodily injury. Following a jury trial in district court, Lake County, defendant was convicted of both counts. Judge Jack L. Green entered judgment sentencing defendant to consecutive 20 year terms in the state prison on each count. Defendant appeals from the judgment of conviction.

The evidence at trial disclosed that on the evening of June 29, 1975, the victim went to the Diamond Horseshoe, a Polson area bar. She was accompanied by her sister Charlotte. Another sister, Debbie, later joined the two girls at the Diamond Horseshoe. While at the bar, the victim noticed defendant Carl Gafford motion to her from across the dance floor. Defendant was married to the victim's sister Debbie.

The victim left the table where she and her two sisters were seated and joined defendant. The two conversed for a few minutes and thereafter left the bar. According to the victim, defendant asked her to go for a ride and talk over the problems he was having with her sister. Defendant denied this. In any event defendant hid his motorcycle near a rural dirt road outside Polson and joined the victim in her car. They then drove to a bar near Dayton, Montana and had two beers each. When they left the bar in Dayton, defendant purchased a bottle of wine with the victim selecting the brand.

They drove around the countryside drinking the wine and listening to the car stereo. Sometime around midnight as they were returning to Polson, defendant who was driving the car stopped alongside the highway in order to relieve himself. Thereafter as defendant attempted to drive the car back on the highway, the car became stuck. The victim became alarmed that her car had been damaged and an argument followed. At this point the evidence is conflicting as to whether the defendant struck, choked,

slapped or sat on the victim. She testified she was forced to accompany defendant into a nearby field where she was subjected to sexual intercourse without her consent. She testified defendant slapped her around and struck her on the nose with his fist whereby she suffered bodily injury. Defendant testified that no sexual intercourse took place on this occasion.

Thereafter defendant and the victim returned to the stuck automobile. A passing motorist stopped and with the aid of a rope freed the car. Defendant and the victim then continued toward Polson and stopped where defendant had previously hidden his motorcycle. Both the victim and defendant testified that sexual intercourse then occurred. Defendant testified the intercourse was with consent, while the victim testified it was without her consent and that she suffered bodily injury.

The victim returned home and was examined the following day by Dr. Coriell, the family physician. The examination revealed several bruises and abrasions on various parts of her face and body. Tests showed the presence of sperm in her vaginal tract. The Lake County attorney was notified.

On June 30, 1975, the county attorney filed a complaint in justice court charging defendant with two counts of sexual intercourse without consent. Defendant was arrested the same day, the public defender was appointed to represent him, bail was fixed and defendant was released on bail. Subsequently defendant waived preliminary hearing and was bound over to district court.

On July 30, 1975, the county attorney filed an information in the district court charging defendant with two counts of sexual intercourse without consent during which the victim suffered bodily injury. Defendant appeared with the public defender, was arraigned and pleaded "not guilty" to each count,

- 3 -

waived his right to a speedy trial, and was released on bail previously posted.

On February 4, 1976, the district court set the date of March 1, 1976 for jury trial. On February 6, new counsel for defendant was substituted for the public defender. On that same date defendant's new counsel filed a written motion to require the state, among other things to provide defendant with a list of witnesses intended to be called by the state at trial, to require the state to produce "all documents, papers, or things which the state intends to introduce into evidence at trial", and all pictures of the victim or of "any item or locale connected with the events upon which these charges were based." The district court granted all these motions.

On February 17, defendant's counsel filed a written notice to take the deposition of the victim and to secure "the names and addresses of persons who have information relevant or material to a determination of the facts surrounding the present charge." The motion of the state to depose the victim was granted and the county attorney assured the court "that to the extent that any names of witnesses who do become known to the State, that they will be turned over to" defense counsel.

The deposition of the victim was taken on February 23. She stated X-rays had been taken of her nose. She further testified these X-rays were taken at the request of the examining physician, Dr. Coriell. At least one week prior to trial, both the county attorney and defendant's attorney were in possession of a written report by Dr. Coriell that made no mention of X-rays or possible fractures. At the time of the deposition the victim authorized Dr. Coriell to release medical information including tests to defense counsel.

The trial began on Wednesday, March 3. On the weekend

- 4 -

of March 6-7, the county attorney telephoned defense counsel and disclosed the existence of X-rays of the victim taken the day following the alleged crime which disclosed a nondisplaced fracture of the nose.

On Monday, March 8, when the trial reconvened, the county attorney moved to enter the name of Dr. David Dahlgren, the radiologist who examined the X-rays, as a witness for the state. Defense counsel objected and requested that in the event the motion was granted a continuance of one week to have the X-rays evaluated by an independent medical expert. A continuance of one day was granted by the court.

Testimony was concluded on March 11 and the case was submitted to the jury. The jury returned a verdict of guilty on both counts. Judgment was entered. Defendant appeals from the judgment.

Defendant raises three specifications of error:

(1) Denial of defendant's motion for mistrial during jury selection based upon nonresponsive and prejudicial answers of two prospective jurors.

(2) Reversible error in permitting impeachment of defendant based on a prior conviction of a felony.

(3) Reversible error in permitting the state to add the name of the radiologist as an additional witness for the state in the middle of the trial.

Directing our attention to the first specification of error, the record discloses that at the beginning of the voir dire examination of prospective jurors, the trial judge asked the whole panel if any of them knew any of the parties. Prospective juror Finley indicated he knew defendant and stated at one time he was in jail with defendant. Defense counsel asked if this jailing was at the time of the arrest of defendant on

the charges now before the court. Finley answered that he thought it was not--it was on a DWI charge. Additionally, during voir dire examination by defense counsel, prospective juror Ducharme was asked whether his association with defendant in high school would cause him to be prejudiced against the defendant. Ducharme answered he knew defendant was in trouble before, but that would not prejudice him.

As to Finley's answers, we find no reversible error on two grounds: (1) Defendant's motion for mistrial was not made at the first recess following the answers, and (2) the answers were invited by the further questions of defense counsel.

Concerning Ducharme's answer, we do not consider it so nonresponsive as to constitute reversible error. Defense counsel could have limited his question to a "yes" or "no" answer and failed to do so. Ducharme's answer disclosing his knowledge and indicating it would not prejudice him, although perhaps technically broader than the question asked, was within the bounds of a normal response by a layman unversed in the intricacies of language and correct legal procedure. We find no reversible error in the district court's denial of defendant's motion for a mistrial.

The second specification of error concerns the state's right to impeach the defendant by evidence of a prior conviction of a felony. Defendant argues this is impermissible since adoption of the 1972 Montana Constitution and repeal of section 94-4723, R.C.M. 1947, shortly after the new Constitution became effective. Our attention is directed to the new Evidence Code, effective July 1, 1977, that eliminates this method of impeachment and particularly to the Commission Comments in connection therewith.

Here, the district court denied a motion of defense counsel outside the presence of the jury to bar the prosecution

from bringing to the jury's attention the fact that defendant had previously been convicted of a felony. Thereafter the state, during cross-examination of defendant in his case-in-chief, asked this question:

"Q. Carl Gafford, have you ever been convicted of a felony? A. When I was 19, I pleaded guilty to receiving stolen property."

During final argument, the county attorney in discussing where the truth lies, made these remarks:

" * * * You are to measure this case from the mouth of the witnesses who sat here. Is this girl telling the truth? You are judging her there. You are judging him there sitting there also and you may consider the fact that in judging his credibility the fact that he is a convicted felon."

Prior to the 1972 Montana Constitution it had long been the law in Montana that a witness could be impeached by evidence of a prior conviction of a felony. Section 94-4723, R.C.M. 1947; Section 93-1901-11, R.C.M. 1947; State v. Coloff, 125 Mont. 31, 231 P.2d 343; State v. Romero, 161 Mont. 333, 505 P.2d 1207. Art. II, Section 28, 1972 Montana Constitution contains this provision:

"Rights of the convicted. Laws for the punishment of crime shall be founded on the principles of prevention and reformation. Full rights are restored by termination of state supervision for any offense against the state." (Emphasis added.)

Section 94-4723 has been repealed. Section 95-2227, R.C.M. 1947, has been enacted and provides in pertinent part:

"Effect of conviction. * * *

"(3) When a person has been deprived of any of his civil or constitutional rights by reason of conviction for an offense and his sentence has expired or he has been pardoned he shall be restored to all civil rights and full citizenship, the same as if such conviction had not occurred."

Section 93-1901-11, R.C.M. 1947, was not repealed and remains the law of Montana. It provides the methods of impeachment and includes:

" * * * it may be shown by the examination of the witness, or the record of judgment, that he has been convicted of a felony."

Section 93-2101-2, R.C.M. 1947, also permits impeachment by

evidence of a prior conviction of a felony.

Defendant contends section 93-1901-11 was superseded by the enactment of section 95-2227. We do not so construe it. The legislature specifically repealed section 94-4723 and made no mention of section 93-1901-11 or 93-2101-2. Repeals by implication are not favored. State v. Winter, 129 Mont. 207, 285 P.2d 149; State ex rel. Dunn v. Ayers, 112 Mont. 120, 113 P.2d 785; State v. Schnell, 107 Mont. 579, 88 P.2d 19. In Fletcher v. Paige, 124 Mont. 114, 119, 220 P.2d 484, it is stated:

> "It will not be presumed that a subsequent enactment of the legislature intended to repeal former laws upon the subject when such former laws were not mentioned."

An implied repeal of a statute will not be so held, absent a clear legislative intent to that effect. State v. Lagerquist, 152 Mont. 21, 445 P.2d 910; Teamsters et al. v. Mont. Liquor Control Board, 155 Mont. 300, 471 P.2d 541; Fletcher v. Paige, supra. Here there is none.

Defendant also argues that sections 93-1901-11 and 93-2101-2, R.C.M. 1947, are part of the civil code and have no application to criminal proceedings. The rules of evidence applicable to civil proceedings have long been held applicable to criminal proceedings. Section 95-3001, R.C.M. 1947, (formerly section 94-7209); State v. O'Neill, 76 Mont. 526, 248 P. 215; State v. Coloff, 125 Mont. 31, 231 P.2d 343; State v. Romero, 161 Mont. 333, 505 P.2d 1207.

Defendant advances the position that permitting impeachment by evidence of a prior conviction of a felony is unconstitutional under the 1972 Montana Constitution. He contends that Art. II, Section 28, providing that full rights are restored by termination of state supervision for any offense against the state, prohibits this method of impeachment. In our view

this Constitutional provision cannot be given such a broad and sweeping construction.  In construing and interpreting constitutional provisions, an interpretation that achieves a reasonable result is favored.  2A Sutherland Statutory Construction, 4th Ed., § 45.12, p. 37 and cases cited therein.  Section 49-134, R.C.M. 1947.  State ex rel. Ronish v. School Dist. No. 1, 136 Mont. 453, 348 P.2d 797; Keller v. Smith, ____ Mont.____, 553 P.2d 1002, 33 St.Rep. 828.  To construe Art. II, Section 28 in the sense contended by defendant would prohibit a sentencing judge from hearing or considering the prior criminal record of a convicted felon in determining the sentence to be imposed; it would prohibit an employer such as a bank, a large supermarket, or any retail business handling money from refusing employment as a teller or cashier to a prior convicted embezzler or thief by reason thereof; and it would prohibit a state institution housing juveniles from refusing employment to a convicted child molester by reason of such prior conviction.  Examples abound illustrating the unreasonableness of such construction. We refuse to give this constitutional provision such absolute, broad and sweeping construction.

In our view the constitutional provision refers to those rights commonly considered political and civil rights incident to citizenship such as the right to vote, the right to hold public office, the right to serve as a juror in our courts and the panoply of rights possessed by all citizens under the laws of the land.  It has no reference to an individual's characteristics, record, or previous conduct demonstrated by a prior felony conviction.

Defendant further states his constitutional right to appear and defend himself in a criminal proceeding in person and by counsel is trespassed if his credibility can be impeached

- 9 -

by a prior felony conviction. Art. II, Section 24, 1972 Montana Constitution. We find no merit in this contention. The testimony of an accused, as in the case of any other witness, is subject to attack by impeachment. Prohibiting impeachment as a violation of an accused's right to defend himself is tantamount to requiring the jury to don blinders in its search for the truth.

Defendant also contends that permitting impeachment by prior conviction of a felony denies a prior convicted felon the equal protection of the law in violation of Art. II, Section 4, 1972 Montana Constitution. He argues this singles out a special class of persons, i.e. prior convicted felons, for special treat which is constitutionally impermissible. Classifications for different treatment are not per se unconstitutional. State v. Craig, ____Mont.____, 545 P.2d 649, 33 St.Rep. 86; Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L Ed 369; Royster Guano Co. v. Virginia, 253 U.S. 412, 40 S.Ct. 560, 64 L Ed 989. It is only if the classification is unreasonable that the constitution is violated. Regardless of the legislative wisdom or merit of singling out prior convicted felons for special treatment, the legislative classification cannot be said to contravene the standard of reasonableness.

Finally, we reject defendant's argument based on the proposed new code of evidence. Whatever may be said of the pros and cons of abolishing impeachment by evidence of a prior conviction of a felony, the new evidence code was not in effect at the time of trial of this case and consequently has no application.

Defendant's third specification of error is whether permitting the addition of the radiologist as an additional state's witness in mid-trial was prejudicial and reversible error.

- 10 -

The controlling statute section 95-1803, R.C.M. 1947, provides:

"Discovery, inspection, and notice. In all criminal cases originally triable in district court the following rules shall apply:

"(a)  List of Witnesses:

"(1)  For the purpose of notice only and to prevent surprise, the prosecution shall furnish to the defendant and file with the clerk of the court at the time of arraignment, a list of the witnesses intended to be called by the prosecution. The prosecution may, any time after arraignment, add to the list the names of any additional witnesses, upon a showing of good cause. The list shall include the names and addresses of the witnesses.

"(2)  The requirement of subsection (a) (1), of this section, shall not apply to rebuttal witnesses.

"(b)  Subpoenas may be used as a discovery device as provided for under section 95-1801(d).

"(c)  On motion of any party within a reasonable time before trial all parties shall produce at a reasonable time and place designated by the court all documents, papers or things which each party intends to introduce in evidence. Thereupon any party shall, in the presence of a person designated by the court, be permitted to inspect or copy any such documents, papers or things. The order shall specify the time, place and manner of making the inspection and of taking the copies or photographs and may prescribe such terms and conditions as are just. If the evidence relates to scientific tests or experiments the opposing party shall, if practicable, be permitted to be present during the tests and to inspect the results thereof. Upon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted or deferred, or make other appropriate orders. If, subsequent to compliance with an order issued pursuant to this rule, and prior to or during trial, a party discovers additional material previously requested which is subject to discovery or inspection under the rule he shall promptly notify the other party or his attorney or the court of the existence of the additional material. The court shall exclude any evidence not presented for inspection or copying pursuant to this rule, unless good cause is shown for failure to comply. In the latter case the opposing party shall be entitled to recess or a continuation during which it may inspect or copy the evidence in the manner provided for above.

"(d)  For purpose of notice only and to prevent surprise, the defendant shall furnish to the

- 11 -

prosecution and file with the clerk of the court at the time of entering his plea of not guilty or within ten (10) days thereafter or at such later time as the court may for good cause permit, a statement of intention to interpose the defense of insanity, self-defense or alibi. If the defendant intends to interpose any of these defenses, he shall also furnish to the prosecution and file with the clerk of the court, the names and addresses of all witnesses to be called by the defense in support thereof. The defendant may, prior to trial, upon motion and showing of good cause, add to the list of witnesses the names of any additional witnesses. After the trial commences, no witnesses may be called by the defendant in support of these defenses, unless the name is included on such list, except upon good cause shown.

"(e) All matters which are privileged upon the trial, are privileged against disclosure through any discovery procedure."

This statute allows the addition of witnesses after trial has commenced on a showing of good cause. Commission Comments to section 95-1803, R.C.M. 1947; State v. Klein, ____ Mont.____, 547 P.2d 75, 77, 33 St.Rep. 283, 286. "Good cause" has been defined as "substantial reason"--one that affords a legal excuse. State v. Rozzell, 157 Mont. 443, 486 P.2d 877; State v. Klein, supra. In Klein the Court stated:

"The court should first determine whether the need for the additional witnesses and the reason for their not being disclosed earlier is a 'substantial reason'. It should then determine whether there is prejudice based on surprise and whether this surprise can be overcome by the granting of a continuance. If the surprise element can be overcome by a continuance, then the witness should be endorsed and the continuance granted. The spirit and intent of the law is that names and addresses of potential witnesses should be disclosed as soon as they are known."

As trial progresses, the showing necessary to establish "good cause" should be more stringent. Commission Comments to section 95-1803, R.C.M. 1947, supra.

The circumstances of this case furnish the background of the district court's ruling. Defendant's counsel took the deposition of the victim eight days before trial. At that time the following information was elicited by defense counsel:

- 12 -

"Q. You indicated that an X-ray had been taken? A. Yes.

"Q. Where and by whom? A. Up at St. Joseph's Hospital.

"Q. Who requested the X-ray? A. Dr. Coriell said that I should have it X-rayed to make sure that it wasn't broken."

Sometime the previous November, the public defender and then counsel for defendant, had received a written medical report from Dr. Coriell concerning his examination of the victim. About a week prior to trial the county attorney received this medical report. Defense counsel had discussed with Dr. Coriell his examination of the victim. No mention of the X-rays in question was made in the written reports or discussion by Dr. Coriell.

Trial commenced on Wednesday, March 3. Jury selection consumed the entire first day. On March 4 jury selection continued and thereafter general instructions were given the jury by the court, the state made its opening statement, defendant reserved his opening statement, and the victim was sworn and testified. On Friday, March 5, the victim resumed her testimony, photographic exhibits and a wine bottle were introduced, the undersheriff testified, the jury examined the premises involved in the incidents forming the basis of the charges, and Dr. Coriell testified.

Over the weekend, the county attorney called defense counsel and informed him that the state intended to present the X-rays and would, for that purpose, request the endorsement of a radiologist as an additional witness for the state.

When court reconvened on Monday, March 8, the state moved to add the name of Dr. David Dahlgren, the radiologist who read the X-rays, as an additional witness for the state and represented to the court that the reason for the motion was

the inability of Dr. Coriell to recall whether or not such X-rays were requested by him. The county attorney represented to the court that Dr. Coriell had not advised either the victim or her family of the findings of the X-rays by Dr. Dahlgren and these were entirely unknown either to the victim or the state. The county attorney represented he was surprised by Dr. Coriell's testimony.

The motion was resisted by defense counsel on these grounds: (1) The presence of the witness and the X-ray had to have been known by the state from the onset of the trial, (2) the state did not furnish defense counsel with the name of the witness or the existence of the X-ray in response to the motion requiring this, (3) Dr. Coriell had not indicated the presence of the X-ray or the findings in his conversation with defense counsel, and (4) it changed the whole complexion of the trial and came as a surprise to defendant in the middle of the trial.

Defense counsel moved for a week's continuance to take the X-ray to an independent radiologist in Missoula for examination. Although some of the discussion went unreported in the record, it appears from the trial judge's reported remarks that defense counsel had already contacted Dr. Fritz in Missoula for this purpose. The court granted a one day continuance. No further request for additional time or continuance was made by defense counsel, nor was any objection made to the reduced time of continuance. Dr. Fritz was never called as a witness for defendant at the trial.

The testimony of Dr. Dahlgren indicated he examined the X-rays and they indicated a nondisplaced fracture of the nose of the victim.

On appeal defendant argues that the late disclosure

of the X-rays and what they showed was permitted without a showing of "good cause" and prejudiced the defendant in defending himself after his theory of the case had been prepared and the case was in mid-trial.  He argues the state by reasonable diligence could have discovered this evidence in advance of trial rather than waiting until the middle of the trial and "ambushing" defendant with a devastating and key piece of its evidence.

In our view, the showing made by the state indicated surprise.  The state represented it knew nothing about the findings of the X-rays and were surprised that Dr. Coriell did not testify as to the X-rays and what they showed.  Defendant's counsel stated the state failed to exercise reasonable diligence prior to trial in uncovering this information.  This is a two-edged sword.  Both the county attorney and defense counsel knew about the X-rays prior to trial.  Apparently neither the state nor the defense knew what they disclosed.  Lacking this information, their relevance and significance were unknown and unappreciated by either the state or the defense.  While the state could have followed through, it relied on Dr. Coriell to cover this point.  The defense could also have uncovered this information by requesting authorization for examination of the X-rays, which they knew were at St. Joseph's Hospital.  We cannot say that the showing by the state did not constitute "good cause" permitting the endorsement of the radiologist as a witness for the state under the circumstances here.

We emphasize that there is nothing to indicate an intentional or deliberate withholding of evidence by the state.  Such are not the facts here, and case rulings under such facts are not germane to this appeal.

Defendant objects to the one day continuance rather

- 15 -

than the week's continuance requested.  At the time the one day continuance was granted, defense counsel had already contacted Dr. Fritz, the independent radiologist it sought to read the X-rays.  When trial was resumed defendant gave no indication that he needed more time.  He did not request an additional continuance.  He simply proceeded with the trial without further objection.  Under these circumstances, he will not be heard to say on appeal that the one day continuance was insufficient.

We note defendant has applied to the Sentence Review Board for a review of his sentence.  This review has been deferred pending outcome of this appeal.  The equity and uniformity of his sentence will be thoroughly reviewed and determined by that body following this appeal.  We reserve jurisdiction to review the sentence thereafter.

The judgment of conviction is affirmed.

_____
                    Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

Mr. Justice Daniel J. Shea dissenting:

I would reverse the judgment of conviction and order a new trial. While perhaps each of the claimed errors would not be sufficient in itself to constitute reversible error, when taken together I believe the defendant was denied a fair trial.

Because of the voir dire examination the past conduct of the defendant, unrelated to the charges, was already in front of the jury before the testimony started. (One juror stated he knew the defendant had been in trouble before but he could still be fair and the other juror stated he had been in jail with the defendant when the defendant had been charged with driving under the influence). It is true that these comments were invited to a degree by defense counsel, but this still did not free the trial judge from assuring that the future course of the trial would not further poison the trial atmosphere.

As a step in assuring this fair trial, the trial court should have granted the defense motion in limine to prevent the jury from knowing of defendant's past felony conviction. It is clear that conviction, one of receiving stolen property obtained some 7 years before the present trial when the defendant was 19 years of age, had no probative value on the issue of rape that was being tried. The sole reason for allowing the prosecution to ask defendant if he had ever been convicted of a felony was based on section 93-1901-11, R.C.M. 1947, a statute which enacted the old common law rule that one convicted of a felony is less worthy of belief, and accordingly the jury should know about the previous felony conviction.

This statute is not a rule of substantive law; it is a rule of evidence. It does not declare that a previous felony conviction must be allowed in evidence; it simply states that it "may" be allowed in evidence. Whether to allow the previous conviction in evidence is a matter of discretion for the trial court, to be determined according to the circumstances of each case, keeping in mind that it is the ultimate duty of the trial court to assure each defendant a fair trial. This duty cannot be watered down by a blindfolded application of a statute, for the duty to assure a fair trial transcends the mechanical application of rules of evidence.

Given the circumstances of this case, it was prejudicial error to allow the jury to consider the defendant's previous felony conviction. This error was compounded by two events occurring after the admission of this evidence.

During settlement of jury instructions the prosecutor offered an instruction on how the jury was to consider evidence of a previous felony conviction, but it also contained law on other points already covered in the instructions. Defense counsel objected on that ground and the trial court refused the instruction. The prosecutor did not offer another instruction on the subject. While defense counsel did not offer an instruction on the point, nevertheless the cumulative evidence relating to defendant's bad conduct was such that the trial judge on his own motion should have given the jury a cautionary instruction.

Furthermore, it was improper for the prosecutor to comment on the previous felony conviction in his final closing arguments where he did not cover the subject in his own opening arguments and defense counsel did not cover the subject in his own final arguments. Had the prosecutor discussed the felony conviction

during his opening arguments defense counsel could have made an informed decision as to how to handle the matter. But at this stage of the arguments defense counsel could only object to an improper argument, and this would only have served to heighten and concentrate the jury's attention on his client's previous felony conviction.

The prosecutor's remarks to which defense counsel could not respond, were:

"You are to measure this case from the mouth of the witnesses who sat here. Is this girl telling the truth? You are judging her there. You are judging him sitting there also and you may consider the fact in judging his credibility the fact that he is a convicted felon.

"Now, measure the truth.* * *"

This combination of circumstances concerning defendant's past conduct, wholly unrelated to the case, deprived him of a fair trial.

It also was improper to allow the X-rays in evidence under the circumstances as exist in this case. This is not a case where, after due diligence was exercised, the prosecutor came up with additional evidence he did not know existed. It is a case where the state had been rewarded for a total lack of diligence. Here, the prosecutor knew the X-rays existed but never bothered to determine if they had any evidentiary value until the middle of the trial.

The prosecutor should have known the X-rays existed when he or his agents talked to the complaining witness to determine if there was probable cause for a criminal complaint. In any event, he most certainly knew the X-rays existed when the defense deposed the complaining witness and she testified X-rays were taken of her nose at St. Joseph's Hospital. But the first time the prosecutor

bothered to determine if the X-rays had any evidentiary value was after both the complaining witness and her mother testified at the trial that X-rays had been taken, even though the treating doctor, Dr. Coriell, testified he could not recall whether he had ordered X-rays. It was only after this testimony that an effort was made to see what the X-rays contained.

I disagree with the majority that the state was legitimately surprised because it expected Dr. Coriell to testify at the trial as to the X-rays and the results. Since the state had never discussed the X-rays with him before trial (in fact, his medical report did not even mention X-rays), it is illogical to conclude the state expected Dr. Coriell to cover the subject of X-rays at the trial. Furthermore, I think the state's failure to comply with discovery concerning the X-rays would have precluded the state from using Dr. Coriell or anyone else to testify concerning the X-rays and the results.

Before trial the defense moved to discover all "documents, papers and things" that the prosecution intended to introduce at trial, and the court so ordered, with no objection from the state. At no time were the X-rays listed as a potential exhibit and at no time before trial was the defense ever given notice the state intended to introduce X-rays in evidence. One of the very purposes of the discovery statutes is to prevent surprise, and here the defense was totally justified in believing the state was not going to introduce any X-rays in evidence. Accordingly, the trial court was in error when it allowed the endorsement of the radiologist on the Information to get the X-rays and the results in evidence.

For the foregoing reasons I would reverse the judgment of conviction.

Daniel J. Shea
Justice.

- 20 -