NO. 94-529

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

ROBERT CORWIN, FRED BISCHOFF,
DEBORAH MILLION, ERNIE BATEMAN,
DENNIS SLONAKER, SUSAN SWARTZ,
MADALINE GEMAR, BARBARA GILLIS,
HELENA GREENLEE, DORIS WISE,
DIANNA WYATT, GAYLE BERNINGHAUS,

      Plaintiffs and Respondents,

    -v-

BOARD OF PUBLIC EDUCATION, STATE
OF MONTANA,

      Defendant and Appellant.

FILED

JUL 13 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighth Judicial District,
              In and for the County of Cascade,
              The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Kimberly A. Kradolfer, Assistant Attorney General,
          Agency Legal Services Bureau, Helena, Montana

      For Respondent:

          Lawrence A. Anderson, Great Falls, Montana

Submitted on Briefs:  June 8, 1995

Decided:  July 13, 1995

Filed:

_____
        Clerk

Justice James C. Nelson delivered the Opinion of the Court.

The Board of Public Education, State of Montana (Board) appeals from the June 17, 1993 Memorandum and Order of the District Court of the Eighth Judicial District, Cascade County, granting the motion for summary judgment of the plaintiff-employees of the Montana School for the Deaf and Blind (Employees) and denying the Board's motion for summary judgment. We affirm.

## Background

The Montana School for the Deaf and Blind (MSDB) is managed by the Board and provides both residential and day-school facilities for handicapped children along with resources for parents and public schools throughout the State. See §§ 20-E-101, MCA, and 20-8-102, MCA. Employees are or were employed at the MSDB for many years in non-teaching positions. Four employees are live-in houseparents, who provide direct supervision and care for the residential students; three employees are itinerant resource consultants, who travel throughout the State serving handicapped children living at home and attending public schools and who also provide resources for parents, teachers and school districts; and the remaining five employees are MSDB administrators--one employee coordinates the Interpreter-Tutor Program, one coordinates the Parent-Infant Program, one is the Athletic/Recreation Director, one is the Director of Health and Food Services, and one is the Director of the Instructional Materials Center.

The Employees are all hired under written, year-to-year, form contracts which contain virtually the same language. At issue here

2

are the contract provisions which grant each employee "all holidays and annual leave to which [the employee] is entitled under state law," and language which grants "all employee benefits to which [the employee] is entitled under the laws of the State of Montana." Additionally, the contracts grant each employee the right to contract renewal, the right to notice and opportunity to be heard in the event of discharge, and the right to appeal the decision to the Board.

The personnel records of the Employees maintained by the State are extensive and show that each Employee is given an annual performance appraisal in which he or she is evaluated on numerous grounds including neatness, thoroughness, use of time, ability to meet schedules, training and direction of subordinates, and ability to plan and organize work. The District Court concluded that these evaluations are based on the basic criteria that employers regularly use to evaluate their employees' job performance. In their Stipulated Facts, the parties agree that Employees are not independent contractors.

MSDB also maintains records of changes in payroll status of each Employee using steps and grades and which show promotions and withholdings by the State as their employer. Employee affidavits submitted in support of their motion for summary judgment indicate they generally do not work typical eight-hour days or 40-hour weeks. Many are on call much of the time or work evenings. Nevertheless, MSDB requires that the Employees fill out time cards showing eight hours' of work per day regardless of actual hours worked.

3

This litigation began with a letter Employees sent to the Board on February 20, 1990, requesting compensation under Title 2, Chapter 18, part 6, MCA, for annual leave and holiday pay accrued over previous school years but not paid. Each Employee's claim was separately computed based on his or her individual pay rate. The Board denied the Employees' claim stating that the Employees were hired under "personal services contracts" and that the Employees were, therefore, exempt from the definition of "employee" under the provision of § 2-18-601(2), MCA (1991). Employees thereafter filed suit, and following discovery and the submission of stipulated facts and affidavits, the parties filed cross motions for summary judgment. The District Court granted the Employees' motion for summary judgment and denied the Board's. This appeal followed.

## Issue

Did the District Court err in granting the Employees' motion for summary judgment and in denying the Board's motion? Underlying that question is the issue of whether the Employees here are "employees" of the State for purposes of annual leave and holiday pay and whether the court properly interpreted § 2-18-601(2), MCA (1991).

## Standard of Review

Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. In determining the propriety of summary judgment, we will utilize the same criteria as a district court; our review is de novo. Minnie v. City of Roundup

4

0 (1993), 257 Mont. 429, 431, 849 P.2d 212, 214. Our review of a district court's conclusions of law is plenary. We simply determine whether the court's interpretation of the law is correct. Steer, Inc., v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

## Discussion

Under Title 2, Chapter 18, part 6, MCA, State employees are entitled to various leave and holiday benefits. For these purposes, the code defines who is and who is not a State employee. Section 2-18-601(2), MCA (1991), provides:

> "Employee" means any person employed by an agency except elected state, county, and city officials, schoolteachers, and persons contracted as independent contractors or hired under personal services contracts.

As regards this statutory definition, it is undisputed that none of the exceptions are at issue here, save only the last--persons "hired under personal services contracts." There is no legislative history with respect to this phrase, and each side proposes a different definition.

Summarizing the parties' arguments, the Board contends that the phrase refers to the "traditional master and servant relationship in which the contract is not delegable and which may not be specifically enforced." As authority for its interpretation, the Board relies on various broad definitions of "personal services contracts," "master," "servant," and "independent contractor" from a number of authorities, including secondary authorities and decisional authorities. Additionally, the Board argues definitions of "personal services" from the

5

Montana Operations Manual as referred to in Teamsters Local 45 v. Montana Liquor Control Board (1970), 155 Mont. 300, 471 P.2d 541. The Board contends also that the Employees here, hired under written contracts, differ from the usual State employee who is hired "at will." The Board criticizes the District Court's rationale that typical "personal services contracts" are exempt from State bidding requirements and, citing to a 1962 Attorney General Opinion analogizing the work of cooks with art, 29 Op.Atty' Gen. No. 49 (1962), disagrees with the trial court's conclusion that such contracts usually pertain to consultants with special skills or to professionals such as lawyers, architects and engineers. The Board also argues various other Attorney General opinions largely dealing with schoolteachers--which these Employees are clearly not. Finally, the Board contends that it is reasonable to deny the Employees payment for statutory leave and holidays because they receive summer vacation and certain holidays on account of the school calendar.

To the contrary, and, again without going into detail, the Employees maintain that the statutory term "personal services contracts" refers to persons hired on an unusual, ad hoc basis for unique or extraordinary skills. Contrary to the Board's broad view of this phrase, the Employees argue, that the term "personal services contracts" must be given a narrow meaning related to the unique personal quality of the services at issue. The Employees contend that it is clear that the legislature did intend that sort of construction, citing the statutes by which the State can hire

private consultants, Title 18, Chapter 8, part 1, MCA. The Employees also maintain that the phrase "personal services contracts" in the statute must be understood as related to the parallel statutory category of "independent contractors," and that such contracts must be exceptional and distinct from the statute's primary category of "employees"--ordinary State payroll labor. The Employees maintain that they were not hired because of any unique personal credentials; that, while their work requires training, they do not possess professional skills or extraordinary, remarkable talents; and that they were not hired for the short-term, *ad hoc* sort of work for which independent contractors or special consultants are typically retained under personal services contracts or independent contractor agreements. The Employees contend that they are simply ordinary State payroll labor employees with the same benefits as and indistinguishable from other State employees. The Employees also reference their form contracts which include as part of the "term" provisions "all holidays and annual leave" to which the employee "is entitled under state law," and conclude by noting that §§ 2-18-103(9), MCA, and 2-18-701(8), MCA, respectively, exclude the Employees from the State pay-matrix system, but include them in the State's group health plan.

For the most part, the District Court adopted the Employees' narrow interpretation of the phrase "personal services contracts" and rejected the broad construction proposed by the Board. Having carefully considered the arguments and authorities raised and cited by the parties, we conclude that the District Court properly

7

interpreted the statute. We agree with its rationale.

In § 2-18-601(2), MCA (1991), an "employee" is broadly defined by reference to certain persons who are specifically excluded from that definition by job (state, county and city elected officials and schoolteachers) and by status (independent contractors and persons hired under personal services contracts). In other words, if a person does not fit into one of the excepted categories, then the person is, by definition, a State employee. Here the only possible excepted category into which the Employees might arguably fall is that which refers to those persons who are hired under "personal services contracts."

In interpreting that phrase the District Court took a common sense approach. The Employees here are typical in the sense of the word--they are people who trade their labor to earn a living and they have done so on a regular and continuing basis as opposed to on an *ad hoc* or one-time/job-specific basis. While specifically excluded from the State pay-matrix system (§ 2-18-103 (9), MCA), the Employees are, nevertheless, specifically included as civil servants in the State group health plans (§ 2-18-701(8), MCA). Each Employee is an "employee" for purposes of State unemployment compensation, workers' compensation, and retirement benefits. Each is closely evaluated annually, and each is given "promotions," "merit increases," "step increases," and changes in grade on State payroll accounting forms.

The Employees' form contracts include, as part of the term provisions, "all holidays and annual leave" to which the employee

8

is entitled under State law. To accept the Board's contention that the Employees are not entitled by law to leave or holidays, necessitates reading out of the contracts (contracts which the State drafted) that provision as being mere surplusage. Clearly, such an interpretation is incorrect, as the whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, § 28-3-202, MCA, and courts are without authority to erase components from unambiguous contract provisions. Hennen v. Omega Enterprises, Inc. (1994), 264 Mont. 505, 509, 872 P.2d 797, 800, (citing In re Marriage of McKeon (1992), 252 Mont. 15, 826 P.2d 537.)

Without demeaning the nature or importance of the work of the Employees, there is no evidence that any of the Employees were hired for any particular professional qualifications, skills or credentials. While each is trained in his or her particular job, none of those require remarkable skills of the type that, for example, a lawyer, doctor, health-care provider, engineer, architect, surveyor, expert or specialized consultant might possess.

That the legislature contemplated that agencies would, on occasion, need to hire consultants, professional persons and experts on an *ad hoc* basis is evident in the statutes governing the procurement of such services codified in Title 18, Chapter 8, MCA. The need for such services and the statutory procedures for retaining such persons provide an obvious explanation for the "independent contractor" and "personal services contracts"

9

exceptions in § 2-18-601(2), MCA (1991). Professionals hired under short-term, *ad* hoc contracts are appropriately excluded from leave and holiday benefits granted to payroll employees. As the District Court observed:

> [T]he term "personal service [sic] contract [sic]" was inserted into § 2-18-601(2), M.C.A., to cover professional person [sic] in that situation, not regular employees such as the Plaintiff's [sic].

We agree. Moreover, accepting the Board's arguments would, as the District Court also observed, include within its broad definition of personal services contracts, virtually every civil service employee within the State. No civil servant would be entitled to annual leave and holiday pay. The personal services contracts exception would effectively swallow the definition of employee and render that definition meaningless. Such an interpretation is unreasonable and cannot stand. Sections l-3-232, MCA and l-3-233, MCA. See American Linen Supply v. Department of Revenue (1980), 189 Mont. 542, 545, 617 P.2d 131, 133.

We hold that the Employees here are "employees" as defined in § 2-18-601(2), MCA (1991); that the Employees here were not hired under "personal services contracts;" and that the District Court's legal conclusions to that effect were correct. Inasmuch as the District Court's decision granting the Employees penalties under § 39-3-206, MCA, was not appealed, the court's ruling to that effect also stands.

Accordingly, having determined that there are no genuine issues of material fact in dispute and that the Employees are entitled to judgment as a matter of law, the District Court's June

10

17, 1993 Memorandum and Order is, in all respects, AFFIRMED.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

11

July 13, 19s)5

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mall, prepaid, to the following named:

Kimberly A. Kradolfer
Assistant Attorney General
Agency Legal Services Bureau
215 N. Sanders
Helena, MT 59620

Lawrence A. Anderson
Attorney at Law
#18 Sixth St. No., P.O. Box 2608
Great Falls, MT 59403-2608

ED SMITH
CLERK OF THE! SUPREME COURT
STATE OF MONTANA

BY: _A. Gallagher_
Deputy